**Consuela QUINN, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION, Defendant.**

**No. 96 C 5416.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 21, 1997.

Supplemental Opinion Jan. 15, 1998.

Mark D. DeBofsky and Richard Q. Holloway of DeBofsky & DeBofsky, Chicago, IL, for Plaintiff.

John T. Murray and Janet C. Hershman of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Consuela Quinn ("Quinn") has brought this Employee Retirement Income Security Act ("ERISA") action against Blue Cross and Blue Shield Association ("Blue Cross") under 29 U.S.C. § 1132(a)(1)(B).[1] Quinn seeks disability income benefits under an employee benefit plan administered by Blue Cross.

Both sides have now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. They have complied with this District Court's Rule ("GR") 12(M) and 12(N)[2] and have now briefed the cross-motions fully, so that the motions are ready for decision. Although both motions must be denied for the reasons set forth in this memorandum opinion and order, this action is dismissed without prejudice, coupled with a direction to Blue Cross to deal with Quinn's claims appropriately.

### Summary Judgment Standards

Familiar Rule 56 principles impose on a party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most

---

1. All citations to provisions of ERISA (which comprises 29 U.S.C. §§ 1001–1368) will take the form "Section—," referring to the Title 29 numbering rather than the statute's internal numbering.

2. This opinion will use "Q" and "BC" rather than the parties' names in referring to their Exhibits and their respective GR 12(M) and 12(N) statements, which will be cited "12(M) ¶ —" and "12(N) ¶ —." References to the parties' joint appendix appear as "Jt.App."

favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 264–65 n. 2 (7th Cir.1997)). Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective—one that this Court has often described as Janus-like—that sometimes involves the denial of both motions. That occasion for such a dual denial does not arise here, because the underlying facts are not in dispute. Instead the parties are at odds about whether, as a matter of law, Blue Cross properly exercised its duties as administrator of Quinn's benefit plan.

### Facts

Quinn began working at Health Care Service Corporation ("Health Care") in July 1990. Health Care is a licensee of Blue Cross doing business as Blue Cross and Blue Shield of Illinois. As a Blue Cross licensee, Health Care participates in its Non–Contributory National Long Term Disability Program ("Program") (BC 12(M) ¶ 7). Blue Cross sponsors, and a committee of its board of directors—the National Employee Benefits Committee("Benefits Committee")—administers, the Program. Funding for the Program, however, comes not from Blue Cross but exclusively from a trust financed by participating employer contributions (Q.12(N) ¶ 15). Quinn became insured under the Program several months after she began working at Health Care.

Quinn stopped working as a Health Care payroll accounts assistant on July 14, 1994 after receiving a hysterectomy. Health Care granted her short-term disability benefits while she recuperated from that operation. But the hysterectomy apparently exacerbated pelvic and urinary tract discomfort with which Quinn had a longstanding problem. In September 1994 Quinn underwent a cystoscopy (a direct visual examination of the bladder using a scope) that led her doctors to suspect that she suffered from interstitial cystitis, a non-bacterial inflammation of the urinary bladder that can cause pain and increased frequency of urination (Q.12(N) ¶ 15). Quinn began to see Dr. Anthony Schaeffer, chairman of the Northwestern University Medical School Department of Urology, to treat her condition (BC 12(M) ¶ 37). Dr. Schaeffer confirmed that Quinn was suffering from interstitial cystitis and placed her on a treatment protocol (Q.12(N) ¶ 32).

In February 1995 Quinn, citing her interstitial cystitis, applied for long-term disability benefits under the Program. Blue Cross referred her to Dr. Dennis Pessis, also a urologist, for an independent medical exam on May 4, 1995 (Q.12(N) ¶ 30). Dr. Pessis reported that Quinn should be off of work for at least four weeks to give Dr. Schaeffer's treatment a chance to take effect, at which point Dr. Schaeffer could re-evaluate Quinn for a possible return to work (BC 12(M) ¶ 48). Blue Cross later approved Quinn's benefits claim, retroactive to January 1, 1995 and continuing through August 31, 1995, so that Quinn could follow Dr. Schaeffer's treatment course and submit additional medical evidence (BC 12(M) ¶ 49; Grant Aff. ¶ 28).

In late August Blue Cross again consulted with Dr. Schaeffer to determine whether Quinn was still unable to work because of the cystitis. Dr. Schaeffer expressed his opinion that Quinn was not disabled in a telephone conversation with a Blue Cross nurse (BC 12(M) ¶ 50). In reliance on Dr. Schaeffer's statement and after an internal review of Quinn's claim by Blue Cross' Medical Director Dr. E. Richard Blonsky, Blue Cross sent Quinn a letter on September 19, 1995 stating that she did not have a disability as defined by the Program (BC 12(M) ¶ 53).

Quinn appealed that decision to the Claims Appeals Committee ("Appeals Committee") in November 1995 and, after that appeal was denied, took her final appeal to the Secretary of the Benefits Committee in February 1996. As part of those appeals Quinn submitted evidence of additional medical evaluations that she had received from Dr. Pessis and from another treating urologist, Dr. Donald Hoard. Both of those physicians concurred that the physical pain and frequent need to urinate caused by Quinn's condition totally prevented her from working (Q.12(N) ¶ 35). Quinn also submitted evidence that she had applied for and received disability benefits from the Social Security Administration

("SSA") during her appeals process (Q.12(N) ¶¶ 35, 36).

Nonetheless Quinn's appeals were unsuccessful. First the Appeals Committee and then the Benefits Committee Secretary Dorothy Calhoon ("Calhoon") reviewed her file and decided against awarding her disability benefits. Quinn now challenges the final denial of her claim.

### Standard of Review

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)[3] has set out the definitive standards for judicial review of benefit eligibility and health plan interpretations:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

Plans that confer discretionary power on the administrator are reviewed under the highly deferential arbitrary-and-capricious standard (*Chojnacki v. Georgia–Pacific Corp.,* 108 F.3d 810, 814 (7th Cir.1997)). Here the Program unequivocally confers such discretionary authority upon Blue Cross and the Benefits Committee to determine employees' eligibility for plan benefits (BC 12(M) ¶ 12).

■ Quinn concedes that *Firestone* controls this case, but she argues that a more searching standard of review should apply because Blue Cross operated under a conflict of interest when it denied Quinn her benefits. In that respect *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 n. 3 (7th Cir.1994) has characterized the arbitrary-and-capricious test as a "sliding scale standard" that may be adjusted in consequence of a fiduciary's conflict of interest. Quinn claims that such a conflict arises here because Blue Cross acted as both insurer and administrator for the Program.

But that argument suffers from a crippling factual error. Even though Blue Cross sponsors and administers the Program via its internal committees, it neither funds nor otherwise insures the Program. Instead, participating employers such as Health Care contribute to a trust that funds the Program's administrative expenses and benefit payments. Accordingly Blue Cross does not itself stand at financial risk due to the payment of benefits to Quinn, so it has no problematic conflict of interest (an issue already resolved in *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047 n. 5 (7th Cir.1989), which found no conflict of interest in a similar ERISA case involving another Health Care employee suing Blue Cross for denial of benefits under the identical Program).

This Court must therefore apply an unfettered arbitrary-and-capricious standard of review in this case. To survive a summary judgment motion, Quinn must show that Blue Cross "abused their discretion—which is to say, that they were not just clearly incorrect but downright unreasonable" (*Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990)). Quinn suggests three different ways, discussed hereafter, in which Blue Cross essentially acted arbitrarily or capriciously.[4]

### Effect of Conflicting Medical Testimony

■ Quinn first argues that it was an abuse of discretion for Blue Cross not to credit the opinions of Drs. Hoard and Pessis. As said earlier, both of them found Quinn totally unable to work because of her pain and her frequent need to urinate.[5] Quinn

---

**3.** Both parties have stipulated that *Firestone* provides the appropriate standard of review for cases such as this one, where the benefit plan does give the administrator discretion to construe the plan's terms.

**4.** Quinn also suggests that the essential issue here is whether she is disabled according to the terms of the Program. That clearly misconceives a court's role in applying the *Firestone* standard of review. This Court cannot make a decision on

the merits of Quinn's claim—its task is rather the far narrower one of considering whether Blue Cross acted arbitrarily and capriciously.

**5.** There are inconsistencies in Dr. Pessis' reports as to Quinn's ability to return to work. In one of his reports Dr. Pessis concluded that Quinn was permanently disabled from working (Jt.App. Tab C, BC0678), while in other reports he indicates that she might be able to return to work, although he is unsure when (Jt.App. Tab C,

contends that Dr. Blonsky's review of her case file was the only contradictory medical evidence on which Blue Cross could have based its denial of disability benefits—an arbitrary reliance on the opinion of a reviewing doctor in the face of recommendations by treating physicians. In that regard Quinn points to the holding in *Donaho v. FMC Corp.*, 74 F.3d 894, 900–01 (8th Cir.1996) that it was an abuse of discretion for a plan administrator to deny benefits to a person based solely upon the conclusions of a reviewing physician that were contradicted by an examining physician and two treating physicians.

But that position requires a complete rejection of Dr. Schaeffer's independent evaluation of Quinn—something that this Court cannot do on Quinn's Rule 56 motion. After all, Dr. Schaeffer told Tracey Thorpe, a nurse case manager at Blue Cross, in a telephone conversation that after examining Quinn he believed that her interstitial cystitis should not prevent her from working. Although Quinn proffers two bases for taking no account of Dr. Schaeffer's opinion, neither is persuasive.

First, Quinn asserts that it would violate Blue Cross policy to consider an opinion given over the phone that was not confirmed in writing. That misstates the facts, for Quinn has shown no such policy. Instead there is unrefuted testimony that Blue Cross prefers, but does not require, that physicians confirm opinions given over the phone in writing (Calhoon Dep. 14). Because not all doctors send in written confirmations, the written activity log that nurse case managers keep of their phone conversations serves as a backup written medium (Calhoon Dep. 27). It cannot be considered arbitrary or capricious for Blue Cross to have considered Dr. Schaeffer's opinion even in the absence of a written confirmation, especially when Blue Cross did obtain the medical records upon which Dr. Schaeffer's opinion rested.

Second, Quinn points out some errors in Dr. Schaeffer's medical records that she claims raises questions about their validity.

BC0672). This opinion accepts the former report as true for purposes of resolving Blue Cross'

While there were some inaccuracies in parts of the report, there was also unrefuted evidence that mistakes of those kinds (in one instance mislabeling Quinn's gender and in another instance misstating her race) are not uncommon in medical records due to the hazards of transcribing dictation (Blonsky Dep. 79–80). There is no evidence that the substantive medical tests and data in the reports upon which Dr. Schaeffer based his conclusions were inaccurate in any way. Such obvious clerical errors are too obviously trivial to discredit Dr. Schaeffer's opinion.

Most importantly, Dr. Schaeffer's opinion was that of a prestigious urologist who had actually been Quinn's specialist physician at the time of the Blue Cross determination of no disability and who had provided an unequivocal and reasoned judgment on that issue. Thus *Donaho* is inapposite because Blue Cross was not at all solely dependent—as Quinn would have it—upon Dr. Blonsky's review of Quinn's file. Instead Blue Cross was presented with conflicting credible medical evidence as to the severity of Quinn's condition. Both Dr. Schaeffer and Dr. Blonsky felt that Quinn's condition was not severe enough to disable her from working. Drs. Pessis and Hoard disagreed. Even if it might be accepted that heavier weight is to be ascribed to the opinions of specialists in the field (thus discounting Dr. Blonsky's opinion), nothing in the law compels Blue Cross to play a mere numbers game by accepting a majority view. Particularly given Dr. Schaeffer's stature, Blue Cross could surely have decided for either side without acting arbitrarily or capriciously. Accordingly, it cannot be labeled an abuse of discretion for Blue Cross to have decided to accept the Schaeffer–Blonsky view rather than the opposing Pessis–Hoard opinion.

### Effect of Conflicting Social Security Determination

Quinn's second line of attack is a variant on her first. She contends that Blue Cross abused its discretion by not deferring to the SSA determination that Quinn was disabled.

summary judgment motion.

It is undisputed that SSA granted Quinn disability benefits, and Quinn submitted evidence of that fact to Blue Cross before her final appeal was heard.

■ Here Quinn is wrong on the law: Social Security disability determinations do not have a binding effect on ERISA plan administrators. As this Court has observed in this very context (*Chandler v. Underwriters Labs., Inc.*, 850 F.Supp. 728, 737 (N.D.Ill. 1994)):

> After all, it is entirely possible for different factfinders to view even identical evidence in different ways and for neither of them to be vulnerable to attack as arbitrary and capricious.

And in this instance the Program itself explicitly rejects any conclusive effect to SSA decisions (Jt.App. Tab B, BC0432). Moreover, in this instance SSA did not even have access to all the relevant facts before Blue Cross, for SSA's decision was made without access to Dr. Schaeffer's opinion of Quinn's nondisability.

Again the arbitrary-and-capricious standard sinks Quinn's motion. It was not an abuse of discretion for Blue Cross to consider and reject SSA's conclusion in view of the opposite opinion of Drs. Schaeffer and Blonsky.

### Effect of Absence of Vocational Determination

■ Quinn's final assertion is that Blue Cross acted arbitrarily or capriciously when it decided that Quinn could return to work without making a vocational study of Quinn's former position at Health Care, her physical limitations and the applicable job market. Instead, Benefits Committee Secretary Calhoon appears to have made the final determination that Quinn could work based on the evidence in Quinn's claim file and on Calhoon's personal knowledge of the Chicago job market. Whether that approach was reasonable depends heavily upon the terms of the Program itself and on the information available to Calhoon about Quinn's employment history and physical capabilities.

To begin with, whether the absence of a formal vocational study is an abuse of discretion can be assessed only in light of what the Program requires from Blue Cross. Obviously the less stringent the requirements of the Program, the more likely it is that a less formal vocational review is reasonable.

On that score Program § 1(p) (Jt.App. Tab A, BC0483) defines disability in these terms:

> "Disabled" means that a Participant is determined on the basis of medical evidence satisfactory to the Committee, wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time his disability occurred.

And the Program Summary elaborates (Jt.App. Tab B, BC0431):

> Since the Program is designed to provide income protection, you will not be eligible for benefits if your medical condition allows you to work in another job that has a salary level or range similar to your current job.

While the showing demanded by the Program is thus not stringent, it still obligates Blue Cross to make the factual determination that a program participant could work at a job comparable to what the person initially held, carrying a similar salary. Quinn last worked for Health Care as a payroll accounts assistant earning approximately $26,000 a year (BC 12(M) ¶ 3). Blue Cross had to find that Quinn was capable of holding a comparable job in a similar salary range before denying her disability benefits.

■ Making such a factual determination requires at least some good faith investigation. As the Program administrator, Blue Cross had a fiduciary duty to "discharge [its] duties with respect to the plan solely in the interest of the participants and beneficiaries" (Section 1104(a)(1)). That duty includes the responsibility to investigate matters essential to the denial of Quinn's claim. As stated in *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566 n. 11 (11th Cir.1990), quoting *Colket v. St. Louis Union Trust Co.*, 52 F.2d 390, 391 (8th Cir.1931):

> Good faith requires an honest effort to ascertain the facts upon which its exercise must rest and an honest determination

from such ascertained facts.... [I]f [the fiduciary] knew of matters concerning which honesty would require investigation, and failed to act, ... it cannot, in law, be regarded as having exercised good faith, and its action would be arbitrary.

Although that standard may not demand a formal vocational study, it surely requires enough of a good faith investigation to support a reasoned determination. Blue Cross falls far short of that here.

Calhoon's ignorance of Quinn's job duties at Health Care is a telling example of Blue Cross' failure to fulfill its duty to investigate Quinn's claim fully. All that Calhoon knew about Quinn's last position at Health Care was that her job title was "payroll accounts assistant" (Calhoon Dep. 19–20). There is no record evidence that Calhoon made any effort whatever to obtain information about Quinn's actual job duties. Calhoon seems rather to have assumed that any clerical job would suffice to meet the Program's standard of comparability.

That minimalist approach might perhaps suffice if Calhoon had really ascertained not only that any clerical job was reasonably "comparable" to the one that Quinn had held but also that Quinn was capable of performing some clerical job, but there is no evidence that Calhoon made a reasonable inquiry into that latter issue either. It is undisputed that Quinn suffered from interstitial cystitis. Calhoon did not investigate whether that condition imposed limitations on Quinn's ability to perform clerical jobs.[6] Drs. Hoard and Pessis clearly believed that it did. Drs. Schaeffer and Blonsky opined that Quinn was not totally disabled from working, but the record is bare of either doctor's view as to whether there were any limitations on her ability to work. In such an evidentiary vacuum, Calhoon had no predicate for assuming that Quinn's interstitial cystitis placed no restric-

tions on her ability to perform clerical work in the face of the contrary medical evidence on that point.

Finally, the wholly ipse dixit nature of any determination by Calhoon that other clerical jobs were similar in salary range to Quinn's former position represents a final nail in the Blue Cross coffin. Though Calhoon said that she knew the value of Quinn's job in the marketplace, her stated certainty in the absence of any specific knowledge about Quinn's job duties is more than mysterious. Indeed, the only record evidence in that respect is that Calhoon knew that the secretaries in her own office in Chicago received approximately equivalent salaries (Calhoon Dep. 29). That paucity of evidence eliminates any basis for a finding that Quinn would have been able to obtain a similar salary even if there were limitations on her ability to work clerical jobs.

In light of Blue Cross' failure to investigate properly whether Quinn was capable of finding a comparable job at a similar salary, this Court is compelled to find that Blue Cross' denial of Quinn's claim was arbitrary and capricious. And that compels denial of Blue Cross' motion for summary judgment. But on the other side of the coin, this Court cannot grant Quinn's Rule 56 motion, for the record also does not show that Quinn's claim must be granted as a matter of law. Blue Cross may still be entitled to refuse Quinn's claim, but only if it conducts an appropriate investigation into Quinn's capability of finding a comparable job at a similar salary.

### Conclusion

Under such circumstances *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir.1996) calls for sending this case back to Blue Cross so that it may conduct the necessary factual inquiry.[7] Accordingly the parties' cross-motions for summary judgment are denied, Blue

6. Blue Cross argues that a letter that Quinn submitted to it in December 1994, evincing an interest in performing her job duties at home, supported Calhoon's conclusion that Quinn was capable of clerical work. While the letter does suggest that Quinn felt capable of working, it also clearly reflects Quinn's sense that there were limits on her ability to do so. In fact the existence of the letter simply underscores Calhoon's

failure to investigate whether or not any such limitations existed.

7. This Court cannot conclude on the record that vacating the present determination for further consideration by Blue Cross would be a "useless formality" (*Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 394 (7th Cir.1983)).

Cross' determination is vacated and Quinn's claim is indeed sent back to Blue Cross for further action. Blue Cross is directed to reconsider whether it should grant or deny Quinn's claim *after* it has conducted appropriate further proceedings in accordance with this opinion to determine whether Quinn is capable of working at a job comparable to her last position at Health Care—and is able to earn a similar salary at such a job. This action is dismissed without prejudice to enable Blue Cross to do so.

 Finally, because the disposition of this matter has been triggered by Blue Cross' plain error despite its having the benefit of an extraordinarily generous standard of review, this Court holds that Quinn is the "prevailing party" for purposes of Rule 54(d) [8] and accordingly orders that taxable costs be awarded in favor of Quinn and against Blue Cross. This should not however be misunderstood as a determination (one that this Court has *not* made) that such status calls for an award of attorneys' fees to Quinn under Section 1132(g)(1)—instead no fees will be awarded to either party.

### SUPPLEMENT MODIFYING MEMORANDUM OPINION AND ORDER [1]

After Consuela Quinn brought this ERISA action against Blue Cross and Blue Shield Association under Section 1132(a)(1)(B), both parties moved for summary judgment under Rule 56. This Court's Opinion held that Blue Cross had abused its discretion by failing to make a good faith factual inquiry into Quinn's vocational options, but it did not grant summary judgment in Quinn's favor. Instead the case was sent back to Blue Cross with directions that it consider whether to grant or deny Quinn's claim after conducting appropriate further proceedings in accordance with the Opinion. Finally, the Opinion decided that Quinn was the "prevailing party" for purposes of Rule 54(d) and awarded

her taxable costs—but it denied her added request for an award of attorneys' fees.

 Quinn now asks this Court under Rule 59(e) to reconsider the adverse aspects of those rulings. This Court does not grant such motions to reconsider lightly. As Judge Dortch Warriner trenchantly remarked in *Above the Belt, Inc. v. Mel Bohannan Roofing Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983):

> The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

Although this Court has quoted and adhered to those high standards on many occasions, by definition there are instances when movants do satisfy the Rule 59(e) requirements. Quinn's thoughtful motion presents just such an instance.

 In principal part Quinn urges this Court to reconsider its decision to send her claim back to Blue Cross for the type of investigation into her vocational options that Blue Cross should have undertaken, but did not, when it considered her case. Quinn contends that the more appropriate remedy here is to confirm her entitlement to past and present benefits now, recognizing that her continuing entitlement to future benefits may be independently reviewed at a later date. As neither party addressed the choice of remedy in her or its Rule 56 submissions to this Court, that is a proper issue for a motion for reconsideration.

Quinn's argument leans heavily upon *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir.1992), which held that it was not an

---

**8.** This holding has taken full account of, but is unaffected by, the fact that neither litigant has succeeded in obtaining a final judgment on the merits via summary judgment.

**1.** This supplement assumes familiarity with this Court's November 21, 1997 memorandum opinion and order ("Opinion"), which it modifies. Accordingly all terms defined in the Opinion will be used here without the need for redefinition.

abuse of discretion for a district court to reinstate an ERISA claimant's disability benefits due to the plan administrator's arbitrary and capricious behavior (rather than remanding the claim to the administrator for further consideration).[2] *Halpin, id.* emphasized two factors that supported the district court's decision to reinstate rather than remand:

> 1. That case involved a review of benefits that the claimant had already been receiving, rather than an initial determination of eligibility.
>
> 2. No new evidence on the merits of the claim had been tendered to the district court.

Those factors provided assurance that the plan administrator (rather than the court) had the first full opportunity to determine the claimant's eligibility for benefits. And that assurance, coupled with the administrator's having exercised that opportunity in a prohibited arbitrary and capricious manner, led *Halpin, id.* to conclude that no principle barred the district court from reinstating the claimant's benefits.

Both of those factors are present in this action as well, and they likewise operate in Quinn's favor here. First, Blue Cross had initially approved Quinn's claim from January 1, 1995 to August 31, 1995, and it then denied further benefits only upon a later review of her eligibility. Hence Blue Cross (as was true in *Halpin* ) cannot claim that it needs a remand to determine the merits of Quinn's claim in the first instance. And as to the second factor, just as in *Halpin* neither party here submitted any additional evidence on the merits during the proceedings before this Court.

Moreover, the restoration of Quinn's disability benefits is an appropriate remedy when, as here, Blue Cross committed significant errors of law while denying her benefit claims. Blue Cross should not be entitled to every administrative protection that might otherwise apply, given its failure to live up to its fiduciary obligations in the first instance (see *VanderKlok v. Provident Life & Accident Ins. Co.,* 956 F.2d 610, 617 (6th Cir. 1992), holding that a plan administrator was not entitled to a remand of the case—even though (unlike here) there was new evidence on the merits—because it had failed to give the plaintiff appropriate notice as to how to present additional evidence to the plan). Here the reinstatement of Quinn's previously-approved benefits operates much like an order preserving the status quo: It restores her to the position that she occupied before Blue Cross acted arbitrarily and capriciously.

This Court's original decision to send this case back to Blue Cross was premised on some language in *Gallo v. Amoco Corp.,* 102 F.3d 918, 923 (7th Cir.1996). As a decision, *Gallo* overruled this Court's determination in claimants' favor by holding that the plan administrator there had in fact provided sufficient articulation of the reasons for denying a claim to satisfy ERISA's procedural requirements (*id.* at 922–23). By way of dictum *Gallo* also postulated that even if the plan administrator had failed to explain its answer sufficiently, the proper remedy would have been to send the case back to the administrator for further findings or explanation (*id.* at 923). In that respect *Gallo* viewed the appeal of the plan administrator's decision no differently than an appeal from another agency or court that had failed to make adequate findings or to explain its grounds adequately (*id.*).

When this case is placed alongside *Halpin* and *Gallo* for comparative purposes, its parallel to the former rather than the latter is far more compelling. What was said in Gallo as to the very different situation of a purely procedural flaw does not curtail this Court's discretion as to the choice of remedy here.[3]

---

**2.** Blue Cross argues that *Halpin* is inapposite because it involved a procedural challenge to the administrator's decision, while Quinn is appealing a substantive decision. There is no suggestion in that decision, however, that such a limitation was contemplated. Nor does such a distinction—a distinction without a conceptually valid difference—commend itself to common

sense analysis. More on this subject later in n. 3.

**3.** In material part Blue Cross responds to Quinn's current motion by questioning the continued validity of *Halpin* 's teaching (Blue Cross Mem. 7):

> As an initial matter, the Association notes that, in light of the strong language in Gallo, it is

In this case the *Halpin*-counseled factors, present here in equal strength, call for the reinstatement of Quinn's disability benefits as the best resolution.

In summary, Quinn is entitled to the benefits that she would have received since August 31, 1995 had her benefits not been cut off. This does not foreclose Blue Cross from denying Quinn's continuing eligibility for long-term disability benefits if that decision were to be reached in connection with some future review, but unless and until such time Blue Cross must pay Quinn the benefits that she would have continued to receive if Blue Cross had not acted arbitrarily and capriciously when reviewing her claim.

■ Finally, because Quinn is now a prevailing party in every sense of that term, it is necessary to re-examine the earlier decision that she was not entitled to attorneys' fees. Quinn now has the benefit of the modest presumption in favor of awarding reasonable attorney's fees to the winning party (*Anderson v. Flexel, Inc.*, 47 F.3d 243, 251 (7th Cir.1995)). And that presumption is further confirmed by the nature of Blue Cross' conduct, which violated an extraordinarily generous standard of review, and by the potential deterrent value of such an award. Hence Quinn is entitled to attorneys' fees in addition to the taxable fees already granted.

### Conclusion

As before, there is no genuine issue of material fact and Quinn is entitled to a judgment as a matter of law. Upon reconsideration, Quinn's Rule 56 motion is granted and the denial of her benefits by Blue Cross is reversed. Blue Cross must reinstate Quinn's benefits dating back to August 31, 1995 and must continue to disburse such benefits until

such time as some further review of Quinn's claim may reveal that she is no longer eligible for any disability benefits. In addition, Blue Cross is ordered to pay not only the taxable costs but also Quinn's attorneys' fees as provided for under Section 1132(g)(1).

doubtful whether any reliance can still be placed on the holding of the earlier *Halpin* case.

Nothing could be farther from the truth: On the very page of *Gallo* that contains the dictum on which Blue Cross seeks to lay stress, that opinion *twice* cites *Halpin* approvingly for that case's substantive holdings (102 F.3d at 923). And Blue Cross describes the earlier *Halpin* decision in topsy-turvy fashion by characterizing that case as addressing only a glitch in the procedural

process leading up to the administrator's decision—to the contrary, the factors that *Halpin,* 962 F.2d at 697 cited to support a reinstatement of benefits "rather than simply remanding the determination to the administrator for further review," thus distinguishing that result from the one ordered in *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 392 (7th Cir.1983), are fully echoed in this case and call for the same reinstatement outcome here.