Lorraine SOVA, Plaintiff,

v.

WHEATON FRANCISCAN SERVICES,
INC. HEALTH AND WELFARE BEN-
EFIT TRUST, DEFENDANT.

No. CIV.A. 97–C–1376.

United States District Court,
E.D. Wisconsin.

March 29, 1999.

Paul D. Christensen, Poulos, Sengstock & Budny, West Allis, WI, for Plaintiff.

Paul E. Benson, Michael Best & Friedrich, Milwaukee, WI, for Defendant.

**DECISION and ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING IN PART, AND GRANTING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANT'S MOTION TO STRIKE AND PRECLUDE TESTIMONY OF EXPERT WITNESSES AND FOR SUMMARY JUDGMENT ON ADDITIONAL GROUNDS**

REYNOLDS, District Judge.

## I. INTRODUCTION

The plaintiff, Lorraine Sova ("Sova"), suffers from multiple sclerosis. From July 1988 until March 1997, she received long-term disability benefits from the defendant, Wheaton Franciscan Services, Inc. Health and Welfare Benefit Trust ("the Wheaton Trust" or "the Trust"). The

Wheaton Trust terminated Sova's benefits effective March 19, 1997, after deciding that she no longer suffered from a "total disability" as defined by the terms of the Trust's long-term disability plan.

Sova claims that the Wheaton Trust's actions violate various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1191, as well as unspecified common-law rules developed under ERISA. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Currently before · the court are cross-motions for summary judgment, and an additional combined motion by the Wheaton Trust to exclude the testimony of one of Sova's expert witnesses and for summary judgment on additional grounds.

## II. FACTUAL BACKGROUND [1]

Sova is 43 years old. She was diagnosed with multiple sclerosis in 1988 and became eligible for total disability benefits from the Wheaton Trust on July 26 of that year. Prior to that date, she worked in the radiology department at St. Mary's Medical Center ("St.Mary's") in Racine, Wisconsin. St. Mary's is owned by Wheaton Franciscan Services, Inc., which is affiliated with the Wheaton Trust. Sova's long-term disability plan ("the Plan") is part of the Wheaton Trust. Sova's employment with St. Mary's made her eligible to participate in the Plan.

Under the terms of the Plan, Sova is entitled to long-term disability benefits if she suffers from a "total disability." The Plan contains a two-part definition of "total

disability." The first definition applies during the initial twenty-four months of disability, while a second, more stringent definition, applies thereafter. The first definition provides:

> [Total disability] [m]eans the complete inability of the participant, due to injury and/or illness, to perform all the important daily duties of his *regular occupation* for a twenty-four (24) month period beginning from the date of disablement.

(July 27, 1998 Decl. of Michael J. Chmelik ("Chmelik Decl."), Ex. 13 at 2 (emphasis added; emphasis in original omitted).) The second definition provides:

> For any period extending beyond an initial twenty-four (24) month period, total disability means the complete inability of the participant to perform the important daily duties of *any occupation for which the participant may be or may become qualified for by reason of education and/or training and/or experience.*

(*Id.* (emphasis added; emphasis in original omitted).) The Trust does not dispute that Sova met the first definition during the initial twenty-four months of her illness. The present action grows out of the Trust's determination that Sova no longer meets the second definition of "total disability."

Sova's multiple sclerosis forced her to leave her job with St. Mary's in July 1988. At one point, her condition was so severe that she was confined to a wheelchair.[2] (*See* July 27, 1998 Decl. of Lou Anne Rossdeutscher ("Ross.Decl."), Ex. 7; Aug. 28, 1998 Am. Decl. of Paul D. Christensen

---

**1.** For the most part, the background facts are taken from the parties' proposed findings of fact. *See* Local Rule 6.05 (E.D.Wis.). When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d). In the background section, undisputed background facts do not contain citations; disputed facts do. Citations are also used where the record indicates that the parties agree on a fact, but the parties have not included that fact in their proposed findings. Citations are also used for direct quotations from the record. As to disputed facts, the

court reviewed the portion of the record cited in support. Any factual statements which are disputed and do not have support in the record were disregarded by the court for purposes of this decision. If a disputed fact proposed by the nonmovant is supported by the portion of the record cited, the court, for purposes of deciding this summary judgment motion, accepts the nonmovant's version as true.

**2.** The record does not indicate whether Sova continues to use a wheelchair.

("Christensen Decl."), Ex. 7.) The parties disagree about whether Sova's condition has improved, or merely stabilized, since that time. The Wheaton Trust contends that as of March 1997, Sova was no longer sufficiently impaired to qualify as "totally disabled" under the Plan.

The Wheaton Trust's decision to terminate Sova's benefits was based on a series of documents generated by Sova's health care providers and persons associated with the Trust that describe the extent of Sova's impairment in recent years. The initial decision to terminate Sova's benefits was made by Ellis & Associates ("Ellis"), a trust servicing organization hired by the Wheaton Trust to administer certain aspects of the Plan. On May 22, 1996, Ellis requested that Sova's treating physician, Dr. Bhupendra Khatri ("Dr.Khatri"), complete a questionnaire regarding Sova's condition. Dr. Khatri's responses were sought in order to certify Sova's continuing eligibility for Plan benefits. In his May 30, 1996 questionnaire response, Dr. Khatri noted that Sova's multiple sclerosis had "stabilized," but described her as "totally disabled." Under a heading titled "restrictions," he wrote:

> Easy fatigability—may need frequent rests[.] Stress has adverse effects on M.S. patients[.]

(Christensen Decl., Ex. 4.)

Later that year, Dr. Khatri examined Sova at his clinic and described her condition in a September 12, 1996 letter to Sova's primary care physician, Dr. Thomas Vravick.[3] Dr. Khatri wrote:

> [Sova] is doing quite well as far as her M.S. is concerned and did not offer any new complaints. She does take a nap in the afternoon and this does seem to rejuvenate her.
>
> She is currently attending school and takes six credits per semester.
>
> . . . .

I did provide her with a letter indicating that because of her easy fatiguability she could not take more than six credits per semester.

(Ross.Decl., Ex. 1.)

On December 13, 1996, Ellis sent Dr. Khatri another questionnaire to certify Sova's continuing eligibility for Plan benefits. Dr. Khatri again described Sova's multiple sclerosis as "stable." (*Id.*, Ex. 2 at 1; Christensen Decl., Ex. 11 at 1.) This time, however, Dr. Khatri did not express an opinion as to whether Sova was "totally disabled." Instead, Dr. Khatri wrote: "Haven't evaluated for disability evaluation." (*Id.* at 2.) Dr. Khatri did go on to describe some reasons why Sova might not be able to work, writing:

> Easy fatiguability . . . . [P]atient does get tired [very easily and] takes only a few credits each semester because of her condition[.] . . .
>
> [Sova] is currently going to school—taking 6 credits/semester—she takes frequent rest breaks and naps in afternoon[.]

(*Id.*)

One month later Dr. Khatri wrote a separate letter to Ellis, in which he stated:

> Regarding Ms. Sova's long term disability, I feel that a functional capacities evaluation would be appropriate at this point in time. I have referred patients to either Dr. Bahal or Dr. Gopal who are physiatrists[4] here at St. Francis Hospital.

(Ross. Decl., Ex. 3; Christensen Decl., Ex. 6.)

Ellis did not refer Sova to Drs. Bahal or Gopal. Instead, Ellis chose to have Sova's functional capacities evaluation ("FCE") performed by a physical therapist and an occupational therapist at NovaCare, Inc. ("NovaCare"), an outpatient rehabilitation

---

**3.** Although the parties do not identify Dr. Vravick, the record suggests that he is Sova's primary care physician. (*See* Ross. Decl., Ex. 7 at 41 & 42; Christensen Decl., Ex. 1 at 23.)

**4.** Webster's Dictionary defines "physiatrics" as: "The branch of medicine specializing in physical medicine or physical therapy." Websters II New Riverside University Dictionary 886 (1988).

organization not affiliated with Ellis or the Trust. The therapists at NovaCare performed several tests on Sova to measure her strength, coordination, and endurance. In a report dated February 12, 1997, the therapists noted:

> Sova put forth consistent maximum effort throughout her participation in this functional capacity evaluation. Therefore, the results of this assessment are valid. Ms. Sova's main limiting factor in performing many of the individual tests was fatigue.... [Sova] required several rest breaks of 5 to 15 minutes each immediately following some of the more strenuous tests ....

(*Id.*) (emphasis in original omitted). The NovaCare report concluded:

> It is recommended at this time, based upon her performance, that Ms. Sova is capable of working, *if the physician agrees,* ... at the sedentary work level.

(*Id.* at 1; Christensen Decl., Ex. 12 at 1.) (emphasis added; emphasis in original omitted). The report describes the "sedentary work level" as "indicative of exerting up to 10 lbs[.] of force occasionally to lift, carry and push or pull objects (as defined by the U.S. Department of Labor)." (*Id.*) A section of the report listing various "physical demand level[s]" suggests that "sedentary" is the lowest level of physical demand aside from complete inactivity. (*See id.* at 4.)

In a letter dated February 24, 1997, Ellis forwarded the results of Sova's FCE to Dr. Khatri, and asked that Dr. Khatri respond to NovaCare's conclusions with respect to Sova's physical capabilities. The letter specifically asked Dr. Khatri whether Sova was "totally disabled" or "able to work (even sedentary with restrictions)." (Ross.Decl., Ex. 5). Ellis did not wait long for a reply.

When nine days [5] had gone by without a response from Dr. Khatri, Ellis sent Sova a letter dated March 5, 1997, terminating her benefits. Ellis's termination letter emphasized the Plan's stringent definition of "total disability," stressing that it re-

quired "the *complete* inability of the participant to perform the important duties of **any occupation** ...." (Ross. Decl., Ex. 6 at 1; Christensen Decl., Ex. 2 at 1) (emphasis in original). The letter went on to explain the reasoning behind Ellis's décision, stating, in part,

> Based upon your physician's review of the FCE, you were released to do sedentary work with the limitations outlined in the FCE. Because you were no longer considered totally disabled for any occupation, you were no longer eligible for benefits under the plan. Effective March 19, 1997 your benefits are terminated.

(*Id.*) The letter also informed Sova that she had a right to appeal the decision. The letter explained that if Sova did request an appeal, her "request should include appropriate issues, comments, and reasons why you think your claim should not have been denied." (*Id.*)

How Ellis's decision could have been "[b]ased upon [her] physician's review of the FCE" is unclear, as there is no evidence that Dr. Khatri had responded to Ellis's request for his comments. But Dr. Khatri had received a copy of Sova's FCE. In a letter to Dr. Vravick, dated March 9, 1997, Dr. Khatri commented on the FCE results:

> [Sova] should be considered disabled as far as gainful employment is concerned, and I would advise that she finish her schooling and then she should seek sedentary work while under close medical supervision.
>
> I am in receipt of the functional capacity evaluation performed by NovaCare and after reviewing the report, as well as considering [Sova's] medical history and current medical status, I would refrain [sic] [Sova] to seek employment at this stage.

(Ross. Decl., Ex. 7 at 2; Christensen Decl., Ex. 7 at 2.) Dr. Khatri also noted:

---

**5.** The court will assume the letter was mailed on the day it was dated.

[Sova] continues to be bothered by markedly easy fatiguability, as well as weakness if she exerts herself physically. An example, the recent physical evaluation that she had for her disability [sic] and it took her a number of days to recuperate from the physical activity involved in the disability evaluation. She also continues to remain incontinent of urine and bowels on occasions.

... [Sova] has enrolled herself in college but at the most, she can only do six credits per semester because the fatigue is so overwhelming that she cannot handle any more than six credits. She will be graduating in a year and a half and would then be able to get a job, hopefully which is sedentary.

At this stage, I strongly feel that she is disabled as far as gainful employment is concerned while she is also attending college on a part-time basis.

(Ross. Decl., Ex. 7 at 1.)

Two days later, on March 11, 1997, Sova, apparently distraught over Ellis's decision, wrote a letter to Dr. Khatri.[6] On March 16, 1997, Dr. Khatri wrote back to Sova:

I do agree that [your] muscle strength is good and that your M.S. has been stable but I cannot determine what your stamina is and I do know that when you are under stress you do not function as well and all of this plays a role in whether you could be gainfully employed or not....

....

... Lorraine, I did indicate to you that I would rather that you finish your education and then find appropriate employment and not be pushed into a situation where it could be deleterious to your health by taking on extra hours of work and the added stress that comes with it. It is not my decision that you should find a job. As a physician I have done what I can to indicate that while your strength is good, you do get tired very easily and the degree of easy fati-

guability and the effect the stress has on your disease, that doing your job as well as attending school would be extremely difficult, if not impossible....

....

... I am simply telling [Ellis] that given your situation at the moment, it would be appropriate for you to complete your education and then find appropriate employment and I believe that was your intent for [sic] going to school. Please clarify this for me as to why then are you going to school when you had no intentions of finding appropriate employment if your M.S. would allow you to.

The disability evaluation which you underwent is specially designed to determine whether a person is capable of working or not and apparently, you did well during the exam for them to make a comment that given your strength and stamina, you should be able to work or do a sedentary job. This was not my conclusion. During your last Clinic visit you indicated that it took sometime [sic] for you to recuperate after the test and I believe that you need to let your disability insurance know about it.

(Ross. Decl., Ex. 8 at 1–2; Christensen Decl., Ex. 9 at 1–2.)

On March 28, 1997, Dr. Khatri sent a letter to Ellis regarding the termination of Sova's benefits. The letter states:

I am somewhat concerned at the decision that Lorraine could return to work. Given her medical condition and even though her medical examination at rest is fairly good, she does get extremely tired and easyfatigued [sic] with even limited exertion. Granted that she is attending school but you must recognize that she takes a very low credit load (8 hours per week) and works at her own pace and I do not feel that the fact she is going to school makes her eligible to go for gainful employment.

---

**6.** Sova's letter to Dr. Khatri is not in the record, but it is referenced in Dr. Khatri's

March 16 response letter to Sova.

(Ross. Decl., Ex. 9; Christensen Decl., Ex. 8.)

On April 22, 1997, Sova sought to have her benefit termination reviewed by the Trust's Plan Administrator, Michael Chmelik ("Chmelik"). In a letter requesting an appeal, Sova's attorneys wrote:

> This appeal is based upon the failure of Ellis and Associates, Inc., to abide by the terms of the disability policy in that it terminated the disability due Lorraine Sova without first obtaining a disability statement from a physician.

(Ross. Decl., Ex. 10 at 1.) Sova and her attorneys believed that Dr. Khatri considered Sova to be unable to perform gainful employment. (*See id.*)

Chmelik responded to Sova's appeal letter on May 28, 1997 and indicated that "additional information would be of value to the appeal decision." (Chmelik Decl., Ex. 14.) The record suggests that the additional information considered by Chmelik was written medical reports from Dr. Khatri prepared prior to Dr. Khatri's most recent questionnaire response. (*See* Chmelik Decl., Ex. 15 at 2–3.) There is no evidence in the record that Chmelik ever contacted Dr. Khatri to have him clarify his statements regarding Sova's ability to work.

In a letter to Sova dated June 17, 1997, Chmelik refused to overturn Ellis's decision. Like Ellis, Chmelik stressed the Plan's stringent definition of "total disability." That definition, Chmelik wrote, requires Sova to have "the *complete inability* . . . to perform the important duties of *any occupation.*" (Chmelik Decl., Ex. 15.) Chmelik further explained,

> Your examinations reveal a high level of neurological function and your physical abilities—while certainly not equivalent to a person who does not have multiple sclerosis—are such that you can attend

school and perform sedentary work. Indeed, Dr. Khatri's records and the results of your functional capacity examination specifically recommend that you can, and should, find employment upon graduation from school.

(Chmelik Decl., Ex. 15 at 3.)

On July 11, 1997, Sova exercised the final appeal available to her under the terms of the Plan, bringing her case to the Wheaton Trust's Claims Review Committee.[7] Sova attorneys again emphasized their belief that Dr. Khatri's reports indicate Sova is not capable of gainful employment. (*See* Chmelik Decl., Ex. 16.) The Claims Review Committee did not agree, and denied Sova's appeal on September 22, 1997. The Claims Review Committee stated its findings, in part, as follows:

> Ms. Sova was given a Functional Capacities Evaluation (FCE) by NovaCare which is a measurement of Ms. Sova's physical capabilities under certain objective measures. . . . Based upon her physician's review of the FCE, Ms. Sova is released to do sedentary work and the limitations outlined in the FCE. . . .
>
> In [sic] evaluation of the pertinent facts of this case is [sic] that Ms. Sova is currently in remission. She is also attending college and enrolls in six credits per semester. Based upon the doctor's records and the FCE, Ms. Sova is capable of attending school and performing sedentary work. Since Ms. Sova is not permanently disabled as defined under the plan, her denial of long term disability benefits is correct.

(Chmelik Decl., Ex. 17.)

Having exhausted her appeals under the Plan, Sova now asks this court to overturn the Wheaton Trust's decision to terminate her long-term disability benefits.

---

**7.** The briefs and the record refer to the committee as both the "Claims Review Committee" and the "Claims Appeal Committee." The Plan identifies the committee as the "Claims Review Committee." (*See* Chmelik Decl., Ex. 13 at 15.) For purposes of consistency, the court will use the Plan's phrasing throughout this opinion.

## III. DISCUSSION

### A. Cross–Motions by Sova and the Wheaton Trust for Summary Judgment

#### 1. Summary Judgment Standard

Sova and the Wheaton Trust both move for summary judgment in their favor. The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex* at 322–23, 106 S.Ct. 2548. The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 40 F.3d 146, 150 (7th Cir.1994).

#### 2. Sova's Claim Under ERISA 29 U.S.C. § 1132(a)(1)(B)

Sova's brief in support of her motion for summary judgment focuses exclusively on her claim under ERISA § 1132(a)(1)(B). That section allows an ERISA plan beneficiary "to recover benefits due to [her] under the terms of [her] plan, [or] to enforce [her] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Sova argues that she is entitled to relief under this provision because the Wheaton Trust's decision to terminate her benefits was "one-sided" and "incomplete."

#### a. Standard of Review When Examining an Eligibility Determination by an ERISA Plan Administrator or Fiduciary

 The court will review the Wheaton Trust's decision under an arbitrary-and-capricious standard. A deferential standard is required where an ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A court examines the terms of the plan at issue to determine the extent of the administrator or fiduciary's discretion. *See Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379 (7th Cir.1994).

In the present action, the terms of the Plan include the following provision:

> The Plan Administrator and the Claim[s] Review Committee shall have complete and absolute discretion to interpret and construe the terms of the Plan and may get the advice of experts (such as a peer review committee) in making its decision regarding your claim. The decision of the Plan Administrator or the Claims Review Committee ... regarding the claim shall be final and conclusive.

(Chmelik Decl., Ex. 13 at 15.) The Wheaton Trust argues that the discretion created by this language dictates that the court may overturn the Trust's decision only if the decision was arbitrary and capricious. Sova has not contested that assertion. Thus, the court will examine the Trust's decision using an arbitrary-and-capricious standard of review.

 Under the arbitrary-and-capricious standard, an ERISA plan's decision

must be upheld "[i]f the trustee makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.,* one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1143 (7th Cir.1990). An ERISA plan's decision is arbitrary and capricious only if it is unreasonable. *See Quinn v. Blue Cross Blue Shield Association,* 161 F.3d 472, 475 (7th Cir.1998). A decision to terminate benefits may be arbitrary and capricious if it was based on an unreasonable interpretation of plan documents or an unreasonable application of facts. *See Donato,* 19 F.3d at 379 n. 2.

#### b. Notice Requirements under ERISA 29 U.S.C. § 1133

■ A court reviews the reasonableness of an ERISA plan's denial of benefits in light of ERISA's provision regarding claims procedure, 29 U.S.C. § 1133. *See Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 688–89 (7th Cir.1992). That statute provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity for any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The regulations promulgated pursuant to this statute require that an ERISA plan's denial notices must contain the following information:

> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which the denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
>
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f). The purpose of the statute and regulations is to ensure that claimants like Sova are "supplied with a statement of reasons that, under the circumstances of the case, permit[ ] a sufficiently clear understanding of the administrator's position. to permit effective review." *Halpin,* 962 F.2d at 690.

#### c. Arbitrary–and–Capricious Standard Applied to the Wheaton Trust's Decision

■ The court finds that the Wheaton Trust's decision to terminate Sova's long-term disability benefits was arbitrary and capricious. The court overturns the Trust's decision because the Trust failed to comply with ERISA's notice provisions, failed to articulate its interpretation of a crucial Plan term, and based its decision on inadequate facts. Given the current state of the record, however, the court cannot determine whether Sova was, in fact, "totally disabled" as defined by the Plan. Therefore, the court will remand this action to the Wheaton Trust's Claims Review Committee, or the equivalent body under the current terms of the Trust's long-term disability plan, for further proceedings in light of this decision.

##### i. Deficiencies in Ellis's Decision

Ellis's initial termination letter to Sova was deficient in several respects. First, it was clearly inaccurate. The letter stated that Ellis's decision was "[b]ased upon

your physician's review of the FCE," (Ross. Decl., Ex. 6 at 1; Christensen Decl. Ex. 2. at 1), but Dr. Khatri had not responded to Ellis's request that he comment on the FCE. The suggestion that Dr. Khatri had reviewed the FCE was especially significant because NovaCare had stated that Sova could work "if the physician agrees." (Ross. Decl., Ex. 4 at 1; Christensen Decl., Ex. 12 at 1.) This made it difficult for Sova to understand the basis for Ellis's decision. Of course, Dr. Khatri's failure to respond was likely a result of Ellis's waiting a mere nine days to hear back from him. Ellis's impatience and the inaccuracy of its notice suggest that Ellis had made up its mind on Sova's claim as soon as it received the FCE.

Ellis's letter also did not comply with sub. (3) of the regulations governing denial notices because it failed to provide a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503–1(f)(3). Instead, the letter ambiguously informed Sova that she "should include appropriate issues, comments, and reasons why you think your claim should not have been denied." (Ross. Decl., Ex. 6 at 1; Christensen Decl., Ex. 2 at 1.) Such a description is too vague to satisfy ERISA's notice requirements. *See Schleibaum v. Kmart Corp.*, 153 F.3d 496, 498, 499 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999) (benefit termination letter failed to satisfy notice requirements where it advised claimant to "forward any additional information or medical reports which you wish to have considered as part of your appeal").

■ It also appears that Ellis may have interpreted the Plan's definition of "total disability" too narrowly. Ellis's letter stressed that the Plan's definition of "total disability" "mean[s] the *complete* inability of the participant to perform the important duties of **any occupation.**" (Ross. Decl., Ex. 6 at 1; Christensen Decl., Ex. 2 at 1 (emphasis in original).) The underlining and bold type were supplied by Ellis; they are not present in the Plan document itself. (*See* Chmelik Decl., Ex. 13 at 2.) This editorial emphasis suggests that Ellis may have given the term "total disability" an impermissibly narrow interpretation. An ERISA plan may not construe its definition of "totally disabled" "so literally that an individual must be utterly helpless to be considered disabled. Rather, the insured should be entitled to recover provided he or she is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation." *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 431 (7th Cir.1992). As the Sixth Circuit has noted, an ERISA plan should not relegate its beneficiaries to "selling peanuts or pencils." *VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 615 (6th Cir.1992). It is not possible to know exactly how Ellis interpreted the Plan's requirements as Ellis never provided Sova with its interpretation.

### ii. Deficiencies in the Plan Administrator's Review

The subsequent review of Ellis's decision by Chmelik, the plan administrator, while more comprehensive, was also inadequate. Ellis's failure to wait for Dr. Khatri's response to the FCE affected the quality of the evidence considered by Chmelik. Although Dr. Khatri eventually wrote to Ellis regarding its decision, his response was not written on the comment form Ellis had originally provided to him. That form had asked: "If she cannot work in any capacity, even sedentary, what are the objective medical reasons she cannot work?" (Ross.Decl.Ex. 5.) Had Dr. Khatri directly addressed this question, it might have given Chmelik clearer evidence to consider during his review. But Chmelik never again asked Dr. Khatri this question, choosing instead to selectively weigh various other—and at times contradictory—statements by Dr. Khatri. In the letters and written evaluations that Chmelik examined, Dr. Khatri suggests both that

Sova "is disabled as far as gainful employment is concerned while she is also attending college," (Ross. Decl., Ex. 7 at 1; Christensen Decl., Ex. 7 at 1), and that he "do[es] not feel that the fact she is going to school makes her eligible to go for gainful employment." (Ross. Decl., Ex. 9; Christensen Decl., Ex. 8.) The conflicting interpretations of Dr. Khatri's comments became a central point of this dispute, brought on by Ellis and Chmelik's failure to have Dr. Khatri respond to the question they originally asked him to answer. Ironically, the Trust now argues in its brief that it decided to terminate Sova's benefits, in part, because "Dr. Khatri's March 28, 1997, letter did not provide objective medical evidence that Ms. Sova could not perform sedentary work." (July 27, 1998 Def.'s Mem. at 13.)

Chmelik's denial letter to Sova also repeated some of Ellis's mistakes. Although Chmelik informed Sova that she could appeal his decision to the Claims Review Committee, Chmelik did not inform Sova what information might be helpful in perfecting her claim. If, as the Trust now suggests, objective medical evidence from Dr. Khatri was necessary, then it would have been appropriate for Chmelik to inform Sova of that in his letter. Ellis and Chmelik's failure to inform Sova of the additional information necessary to perfect her claim turned the review process into a battle over how to interpret Dr. Khatri's comments—a fight that only the Trust could win.

Chmelik may also have interpreted the Plan's definition of "total disability" too narrowly. Chmelik's letter stated the definition, in part, as follows: "the *complete inability* of the participant to perform the important duties of *any occupation.*" (Chmelik Decl., Ex. 15 at 1.) Like Ellis, it was Chmelik who supplied the underlining and, like Ellis, Chmelik's emphasis suggests a very narrow interpretation. Chmelik's letter provides no other explanation of his interpretation.

Even if Chmelik had provided a clearer interpretation of the Plan's "total disabili-

ty" provision, his finding that Sova failed to meet this provision would still have been based on insufficient evidence. All of the evidence considered by Chmelik supports no more than the theoretical possibility that Sova can obtain gainful employment. Dr. Khatri's comments, at best, suggest that Sova is capable of handling a workload equivalent to six credits of college-level classes. NovaCare found that Sova was capable of working at a sedentary level, but also noted that Sova was easily fatigued and required frequent rest breaks following some of the more strenuous tests. Dr. Khatri added that Sova needed "a number of days to recuperate from the activity involved in the [FCE]" and continued to suffer from incontinence. (Ross. Decl., Ex. 7 at 1; Christensen Decl., Ex. 7 at 1.) None of the evidence considered by Chmelik addresses whether there are actually jobs available in the labor market that will accommodate Sova's significant limitations. Are there employers willing to hire someone who may only be capable of working eight hours a week and who may need a flexible work schedule, frequent bathroom breaks, and an occasional nap in order to work effectively? Maybe there are. Maybe the court is mischaracterizing the true, but unstated, opinions of Dr. Khatri and NovaCare regarding Sova's ability to find a job. The point is Chmelik could not know, because he did not have such evidence before him when he decided that Sova was capable of finding a job.

### iii. The Claims Review Committee's Decision

The only evidence regarding the Claims Review Committee's decision is the termination letter it sent to Sova. The letter is terse. To the extent the letter's contents reveal anything about the committee's deliberations, they suggest the review was cursory. Nothing in the record indicates that the committee considered evidence not reviewed by Chmelik. Nowhere does the committee explain its interpretation of "total disability." In fact, the committee incorrectly identifies this crucial provision

as "permanently disabled." (*See* Chmelik Decl., Ex. 17.) The committee characterizes Sova's multiple sclerosis as being "in remission," yet the court can find nothing in the record supporting the use of this term of art. (*Id.*) The committee's letter also contains a close paraphrase of the inaccurate statement made in Ellis's original termination letter; the committee's letter states: "Based upon her physician's review of the FCE, Ms. Sova is released to do sedentary work and the limitations outlined in the FCE." (*Id.*) Nor does the letter indicate that the committee considered whether employers would be willing to hire Sova despite her physical limitations. In sum, the committee's review did nothing to correct the deficiencies in the prior steps of the Trust's decision.

### d. Remedies

■ The court's finding that the Trust's decision was arbitrary and capricious does not, however, mean that Sova is necessarily entitled to a retroactive reinstatement of her benefits. The record does not provide a sufficient basis for the court to conclude that Sova is unquestionably "totally disabled" under the terms of the Plan. Where an ERISA plan fails to make adequate findings or fails to provide adequate reasoning for its decision, the proper remedy is to remand the case for further proceedings. *See Quinn,* 161 F.3d at 477.

The court will remand Sova's claim for benefits to the Trust's Claims Review Committee, or the equivalent body now existing under the terms of the Trust's long-term disability plan, for a redetermination of her eligibility for benefits as of the date of her termination. On remand, the Claims Review Committee must take, at a minimum, the following actions:

1) provide an interpretation of the Plan's definition of "total disability," including the terms "complete inability" and "any occupation;"

2) provide findings of fact, with appropriate evidentiary support, regarding Sova's ability to obtain employment

as required under the Plan's definition of "total disability;"

3) provide Sova with an opportunity to have a functional capacities evaluation conducted by Drs. Bahal or Gopal;

4) obtain a statement from Dr. Khatri regarding Sova's ability to perform sedentary work, including any objective medical evidence he may have to support his opinion; and

5) inform Sova of any additional information necessary to perfect her claim.

### 3. Sova's Claims Under ERISA 29 U.S.C. §§ 1104(a)(1)(B) & (D), 1140, and Common Law

■ Sova's complaint also listed claims for breach of fiduciary duty under ERISA 29 U.S.C. §§ 1104(a)(1)(B) and (D), and an unspecified claim under the federal common law of ERISA. Despite the Wheaton Trust's arguments for summary judgment as to those claims, Sova has not mentioned them at all in her briefs. Therefore, the court will grant summary judgment in favor of the Wheaton Trust on Sova's claims under ERISA fiduciary duty provisions and the federal common law of ERISA.

### B. The Wheaton Trust's Combined Motion to Strike and Preclude the Testimony of Dr. Khatri and Summary Judgment on Additional Grounds

■ The Wheaton Trust also moves to strike Dr. Khatri as an expert witness for Sova, and to preclude Sova from introducing the testimony of any other expert witness at trial. Further, the Trust moves that if the court grants its motion to strike and preclude the testimony of Sova's expert witnesses, the court should grant summary judgment in the Trust's favor because Sova will be unable to carry her burden of proof without that testimony.

The Wheaton Trust argues that Sova should be precluded from introducing the testimony of Dr. Khatri because Sova failed to timely file Dr. Khatri's expert

report. According to the Trust, Dr. Khatri's report was filed a month and a half after the deadline for such reports established in the court's scheduling order. The Trust also asserts that Sova's counsel has indicated he may call other expert witnesses despite not making any of the disclosures required by this court's local rules. In the Trust's view, these witnesses should also be precluded from testifying. Without these witnesses, the Trust argues, Sova cannot prove her case and, therefore, the court should grant summary judgment in favor of the Trust.

The Trust's suggested punishment is a tad out of proportion to the crime. Assuming Sova did submit Dr. Khatri's expert report late, and has not made required disclosures for other witnesses, those violations can be addressed with the remedy less severe than dismissal of Sova's claims. If this case ever comes to trial, the court will deal with Sova's reports and disclosures at that time. In the meantime, the court will deny the Trust's motion.

## IV. CONCLUSION

The August 28, 1998 motion by plaintiff Lorraine Sova, for summary judgment, is **GRANTED.**

The July 27, 1998 motion by defendant Wheaton Franciscan Services, Inc. Health and Welfare Benefit Trust, for summary judgment, is **GRANTED IN PART** and **DENIED IN PART.** The court grants summary judgment in favor of the defendant on plaintiff's claims under 29 U.S.C. §§ 1104(a)(1)(B) and (D), and 1140, for breach of fiduciary duty, and plaintiff's claims under the federal common law of ERISA. The court denies defendant's motion for summary judgment as to plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B).

The August 28, 1998 motion by defendant Wheaton Franciscan Services, Inc. Health and Welfare Benefit Trust, to strike and preclude expert testimony, and for summary judgment, is **DENIED.**

The action is **REMANDED** to the Claims Review Committee of the Wheaton Franciscan Services, Inc. Health and Welfare Benefit Trust, or its equivalent under the terms of the Wheaton Franciscan Services Long–Term Disability Plan, for further proceedings pursuant to this order.

The court will retain jurisdiction over this action should further proceedings be necessary following the Claims Review Committee's review of Sova's claim on remand.

Because there is no reason to maintain this file in active status, the Clerk of Court is instructed to submit a form JS–6 to the Administrative Office, thereby closing this action for statistical purposes.

Nothing in this order shall be considered a dismissal or disposition of this action on the merits, and any party may reopen this action by making an appropriate motion.