Consuela QUINN, Plaintiff–Appellee,

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION, Defendant–Appellant.**

No. 98–1360.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1998.

Decided Nov. 25, 1998.

Mark D. DeBofsky (argued), DeBofsky & DeBofsky, Chicago, IL, for Plaintiff–Appellee.

John T. Murray (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellant.

Before BAUER, MANION and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Consuela Quinn was collecting long-term disability benefits from her former employer, Blue Cross and Blue Shield of Illinois, because her medical condition rendered her unable to work. Upon reconsideration of her claim when her benefits were scheduled to stop, however, Blue Cross and Blue Shield determined that Ms. Quinn was no longer disabled as defined by its long-term disability program and denied her claim. After exhausting her administrative remedies, Ms. Quinn initiated a suit under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) to recover benefits under an employee welfare benefit program. On cross-motions for summary judgment, the district court determined that the Program's Secretary acted arbitrarily and capriciously in denying Ms. Quinn's benefits and remanded the case to conduct further proceedings regarding her vocational qualifications. After a Rule 59(e) motion to reconsider, the court granted summary judgment in favor of Ms. Quinn and ordered Blue Cross to reinstate her benefits from the date of termination. The court also ordered Blue

Cross to pay taxable costs as well as reasonable attorney's fees. Blue Cross appeals this order, claiming that the Program Secretary did not act arbitrarily and capriciously, or, in the alternative, that even if the Secretary did act in such a fashion, the court should have remanded the claim to the Secretary for redetermination rather than reinstating her benefits retroactively. Blue Cross also appeals the district court's awarding of taxable costs and reasonable attorney's fees to Ms. Quinn. We affirm the district court's decision that the Program Secretary acted arbitrarily and capriciously, but remand the case for redetermination of the proper remedy in accordance with this decision.

## I. BACKGROUND

Consuela Quinn ("Quinn") began working for Health Care Service Corporation ("HCSC") as a wage coordinator on July 16, 1990. HCSC is a licensee of Blue Cross and Blue Shield Association, and does business as Blue Cross and Blue Shield ("Blue Cross"). After she had worked for Blue Cross for six months, Quinn became eligible to participate in the company's NonContributory National Long Term Disability Program (the "Program"). The program provides monthly income to Blue Cross employees in the event they become disabled. Quinn stopped working for Blue Cross on July 16, 1994 due to a disability. On September 9, 1994, she underwent a cystoscopy, a fiber-optic visual examination of the bladder. The cystoscopy revealed that Quinn had a condition known as interstitial cystitis, a non-bacterial inflammation of the urinary bladder which may cause pain and an increased frequency of urination. Consequently, Quinn consulted her gynecologist, Dr. Bunn, who opined that her condition rendered her disabled and unable to work. Based on Dr. Bunn's opinion and some other documentation, HCSC approved Quinn to receive benefits under its short-term disability program, effective July 29, 1994. This short-term disability program is different from Blue Cross' long-term disability program which is at issue in this case.

In February of 1995, Quinn applied for long-term disability benefits under the Program, stating interstitial cystitis as the cause of her disability. The Program states that a person is disabled when he is:

wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time his disability occurred. The determination as to whether a Participant is "Disabled" shall be based on medical evidence satisfactory to the Committee in its sole discretion.

The Program goes on to define a "comparable occupation" as one that provides a similar salary range for a person with similar skills and education as the claimant. Furthermore, the Program gives full discretion to a Committee to construe the Program and its terms and to determine all questions that arise under it. Dorothy Calhoon ("Calhoon") is the Secretary of this Committee, and she ultimately decided Quinn's claim.

In support of her claim that she was disabled, Quinn supplied reports from Rogelio Failma, M.D., which stated that her condition made it "difficult for her to work." Appellee's Brief at 3. In addition, Dr. Failma did not expect any improvement in Quinn's condition for four to six months. Before making a final determination of her claim, Blue Cross referred Quinn to Dennis Pessis, M.D., for an independent medical examination. Dr. Pessis determined that Quinn should be placed on disability for at least four weeks, and he suggested that she participate in a research protocol conducted by Anthony Schaeffer, M.D., chairman of the Department of Urology at Northwestern University Medical School.

On May 15, 1995, Quinn received approval for her benefits under the Program, retroactive to January 1, 1995, lasting until August 31, 1995, at which time Quinn could submit more medical evidence to support her claim for long-term disability. In the interim, Quinn began receiving Social Security Disability benefits effective July 16, 1994. On August 29, 1995, Tracey Thorpe ("Thorpe"), a Nurse Case Manager for Blue Cross, spoke with Dr. Schaeffer regarding Quinn's case. Dr. Schaeffer told Thorpe that, although Quinn had a frequent need to urinate, he did not think that this condition was enough to

keep her from working. Consequently, on September 19, 1995, Thorpe informed Quinn, through her attorney, that she no longer qualified for the Program because her interstitial cystitis alone was not disabling. Thorpe referred to Dr. Schaeffer's most recent diagnosis to support her conclusion.

Quinn administratively appealed Blue Cross' decision, submitting records from another urologist, Donald Hoard, M.D. Dr. Hoard opined that Quinn's condition, which caused severe pelvic pain and frequent need to urinate, rendered her disabled. She filed a report from Dr. Pessis, as well, who determined that Quinn was incapable of performing even minimal sedentary activity. On February 7, 1996, Dr. Blonsky, who had previously reviewed Quinn's condition, opined that her ailment did not render her disabled. Blue Cross, based on these diagnoses, as well as the diagnosis from Dr. Schaeffer, upheld its denial of benefits on June 28, 1996, stating that Quinn was not disabled because she was capable of working in one of any of the thousands of positions that could pay her in the same salary range as her previous position with HCSC. This was Quinn's last step in exhausting her administrative remedies.

After the denial of her benefits was upheld, Quinn filed this ERISA claim pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f). The parties filed cross-motions for summary judgment, and on November 21, 1997, the district court denied both motions. In its decision, the court dismissed Quinn's claim without prejudice, and found that Blue Cross did not abuse its discretion in the weight it accorded each doctor's opinion when assessing Quinn's claim. The court also found that, even though the Social Security Administration granted Quinn disability benefits, that decision was not binding on the Program's Secretary. The court ruled, however, that Blue Cross did act arbitrarily and capriciously in not conducting a more thorough vocational determination when it decided that Quinn could perform another job in the same salary range as the job she previously held with HCSC. The court remanded the case to the Program's Secretary to conduct "further proceedings" before reaching its decision whether to grant or deny Quinn's benefits. The court left open the possibility for Blue Cross to reject Quinn's claim, but only after a more complete vocational inquiry. Finally, despite denying her motion, the court declared Quinn a "prevailing party" for purposes of Rule 54(d) and awarded her taxable costs, but not attorney's fees.

Quinn then filed a Rule 59(e)[1] motion to have her benefits reinstated retroactively and to award her attorney's fees. The district court granted this motion and, relying heavily on our decision in *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685 (7th Cir.1992), granted Quinn's previous motion for summary judgment and ruled that the proper remedy should have been retroactive reinstatement of her long-term disability benefits. In addition, the court awarded Quinn reasonable attorney's fees. In total, the district court awarded Quinn $39,431.46 ($13,350.57 in retroactive benefits, $25,012.50 in attorney's fees and $1,068.39 in costs). Blue Cross filed this appeal on February 13, 1998.

## II. ANALYSIS

■ We review a district court's granting of summary judgment *de novo*. *Larsen v. City of Beloit*, 130 F.3d 1278, 1281 (7th Cir.1997). The parties in this case have stipulated that the Program gives a Committee, through various employees including its Secretary, Calhoon, full discretion to construe and interpret its terms. Therefore, the parties agree that the Secretary's decision should be reviewed for an abuse of discretion under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114–15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under this standard, we will only look at whether the Secretary acted unreasonably, not whether she merely made a mistake. *Karr v. National Asbestos Workers Pension Fund*, 150 F.3d 812, 814 (7th Cir. 1998). Since there is no issue of a conflict of interest in this case (Blue Cross neither funds nor insures the Program), we will analyze this case under a pure arbitrary and capricious standard.

1. Rule 59(e) allows a trial judge to alter or amend a previous judgment. Fed.R.Civ.P. 59(e).

## A. Did Blue Cross Act in an Arbitrary and Capricious Manner

■ Blue Cross argues that its Program Secretary, Dorothy Calhoon, did not act arbitrarily and capriciously when she weighed all of the medical evidence and determined that Quinn's condition did not render her disabled, as defined by the Program. In support of this contention, Blue Cross refers to Drs. Schaeffer's and Blonsky's opinions that Quinn's frequent need to urinate did not disable her from working. Furthermore, Blue Cross claims that the arbitrary and capricious standard requires that a court give great deference to the decision of its Secretary, and it does not require that the Secretary undergo a complete vocational evaluation when determining whether a participant is capable of performing a comparable occupation. Rather, Blue Cross asserts that Calhoon acted reasonably when she decided that there were thousands of jobs in the local economy that Quinn could perform, based on her job with HCSC which was neither highly skilled nor highly paid.

The district court disagreed, however. In his opinion, Judge Shadur stated that Calhoon was unable to make an informed decision about whether Quinn could perform a comparable job without knowing any of the duties of Quinn's former job with HCSC. He said that Calhoon only based her opinion on her knowledge of the Chicago job market and her notion of what skills are required for a clerical position. According to Judge Shadur, she made no inquiry, nor did any doctor's opinion state, whether there were any limitations in Quinn's ability to work. Thus, the district court determined that Calhoon's decision that Quinn could perform any clerical work was unreasonable.

We agree with the district court that Calhoon's decision was reached arbitrarily. We emphasize, however, that we neither determine whether Quinn is disabled, nor whether Calhoon's decision was incorrect, rather only that she denied Quinn's benefits in an arbitrary and capricious manner. In determining whether Quinn qualified for long-term disability benefits, Calhoon had to determine whether Quinn was capable of performing another job with a salary level similar to her current job with HCSC. Calhoon decided that Quinn was able to perform another job, given her last job as a payroll accounts assistant. At her deposition, however, Calhoon admitted that she did not know what Quinn's job duties entailed, what her exertional requirements were, any training and experience she possessed, or any transferable skills she may have obtained. Calhoon simply based her opinion on her own notion of what a payroll accounts assistant does. This, without more, is not enough. We agree that Calhoon was under no obligation to undergo a full-blown vocational evaluation of Quinn's job, but she was under a duty to make a reasonable inquiry into the types of skills Quinn possesses and whether those skills may be used at another job that can pay her the same salary range as her job with HCSC. It was insufficient for Calhoon to determine that Quinn could perform any clerical job in the marketplace simply because she was not highly paid or highly skilled. In fact, when Calhoon surmised that Quinn could be a "claims analyst," she admitted that she had no idea whether Quinn had either the training or education to perform that job. Calhoon Deposition at 26. For Calhoon to make a reasonable determination that Quinn could work at a job with a comparable salary range as a payroll accounts assistant, at the very least she should have identified the skills necessary to obtain another job and whether Quinn possessed those skills. By not even performing the slightest inquiry into this matter, Calhoon made her decision arbitrarily and capriciously.

## B. Reinstatement of Benefits as the Proper Remedy

■ Given that Calhoon's decision was arbitrary and capricious, we must now determine the proper remedy. Originally, the district court remanded the case to the Program Secretary to conduct a more thorough inquiry as to whether Quinn is capable of performing another job in the same salary range as her former job. Upon reconsideration, however, the district court reinstated Quinn's benefits "that she would have continued to receive if Blue Cross had not acted arbitrarily and capriciously when reviewing

her claim." *Quinn v. Blue Cross & Blue Shield Ass'n*, 990 F.Supp. 557, 566 (N.D.Ill. 1997). We believe that the court's initial determination was the proper one.

Quinn's argument that she is entitled to have her benefits reinstated relies very heavily upon our decision in *Halpin, supra*. In that case, Halpin was receiving total disability benefits from his former employer, W.W. Grainger, Inc. ("Grainger"). After a few years, Grainger terminated Halpin's benefits because it claimed that he no longer fit its plan's definition of disabled. Halpin appealed that decision and the lower court found that Grainger's termination of Halpin's benefits was arbitrary and capricious and did not conform to the Regulations governing ERISA claims because it did not provide an adequate explanation of how it made its determination. The court determined that Grainger's notification did not afford Halpin an opportunity for a "full and fair review" as governed by ERISA. *Halpin*, 962 F.2d at 687–89. The court vacated Grainger's decision and ordered that Halpin's benefits be reinstated retroactively. We agreed with the district court and concluded that the court did not abuse its discretion in awarding retroactive benefits, and, based on Grainger's conduct, it could not terminate the benefits it had previously awarded. *Id.* at 697–98.

There is no question that, in some cases, retroactive reinstatement of benefits is the proper remedy. *See, e.g., Grossmuller v. International Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 715 F.2d 853, 858–59 (3d Cir.1983) (reinstatement of benefits awarded because the claims procedure did not comply with ERISA's requirements for full and fair review). Cases that call for reinstatement usually either involve claimants who were receiving disability benefits, and, but for their employers' arbitrary and capricious conduct, would have continued to receive the benefits, or they involve situations where there is no evidence in the record to support a termination or denial of benefits. *See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir.1997) (nothing in the record indicated a material change in the claimant's

physical or mental condition); *Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991) (selective review of medical evidence and a conclusion based on that selectivity was unreasonable); *Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600, 609–10 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1250, 137 L.Ed.2d 331 (1997) (remand is inappropriate because no factual determinations needed to be made); *Godfrey v. Bellsouth Telecommunications, Inc.*, 89 F.3d 755, 760–61 (11th Cir.1996) (retroactive benefits was the proper remedy where district court made a finding that the claimant was, indeed, disabled).

Awarding retroactive benefits is not always the proper remedy, however. In *Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997), we determined that when a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case, as well as a conventional case, is to remand for further findings or explanations, unless it is "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Id.* at 923. Other circuits have also held that remand in a situation such as this is the proper remedy. *See, e.g., Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460–61 (9th Cir.1996) (remand is the appropriate remedy when plan administrator misconstrued terms of the plan and denied claimant's benefits); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073–74 (2d Cir. 1995) (remand is proper when it is uncertain whether the only proper determination was to grant the claim).

We believe that remand to the Program Secretary is the more appropriate remedy in this case. When Blue Cross granted Quinn her benefits, they were to be terminated on August 31, 1995, whereupon Quinn could submit additional medical evidence supporting her claim to have her benefits continued. On August 29, 1995, Blue Cross informed Quinn that her benefits would not continue because, in its eyes, Quinn was no longer disabled.

Unlike *Halpin* and *Grossmuller*, Quinn was not scheduled to continue receiving benefits under the Program, nor did Blue Cross' notification fail to give Quinn a reasonable opportunity for a full and fair review. Calhoon simply did not make an adequate finding when she determined that Quinn was able to obtain another comparable occupation. Her decision to deny Quinn's claim was arbitrary and capricious, but not necessarily wrong. As the district court noted in its original order, "Blue Cross may still be entitled to refuse Quinn's claim, but only if it conducts an appropriate investigation into Quinn's capability of finding a comparable job at a similar salary." *Quinn v. Blue Cross and Blue Shield Ass'n*, 990 F.Supp. 557, 563 (N.D.Ill.1997). This is not a case where it is clear-cut that it was unreasonable for Calhoon to deny Quinn's benefits. Retroactive benefits would not restore the status quo, as the district court ultimately decided, but might provide Quinn with an economic windfall should she be determined not disabled upon a proper reconsideration. In essence, by awarding retroactive benefits, the district court decided that Quinn was disabled, thus substituting its own judgment for that of Calhoon, and that was inappropriate in this case. Therefore, we find that the district court's original disposition in this case was the proper one, and Quinn is not entitled to retroactive benefits unless and until she is determined disabled under the terms of the Program.

### C. Taxable Costs and Attorney's Fees

 Lastly, Blue Cross contends that the district court erred when it ruled that Quinn was entitled to costs and reasonable attorney's fees. ERISA allows a judge, in his discretion, to award "reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). An award of attorney's fees is reviewed for an abuse of discretion. *Filipowicz v. American Stores Benefit Plans Committee*, 56 F.3d 807, 816 (7th Cir.1995). This circuit has recognized two processes for analyzing whether attorney's fees should be awarded to a party in an ERISA case after it has attained "prevailing party" status. The first test looks at the following five factors: 1) the degree of the

offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions. *Id.* The second test looks to whether or not the losing party's position was "substantially justified." *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984). In any event, both tests essentially ask the same question: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Hooper v. Demco, Inc.*, 37 F.3d 287, 294 (7th Cir. 1994) (quoting *Meredith v. Navistar Intern. Transp. Corp.*, 935 F.2d 124, 128 (7th Cir. 1991)).

Quinn relies on *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 990 F.Supp. 1039, 1041 (N.D.Ill.1998) to support her claim that she is entitled to reasonable attorney's fees even if we decide she is not entitled to retroactive benefits. In that case, the district court awarded prevailing party status to an ERISA claimant who merely had her claim remanded rather than having benefits awarded. The court reasoned that, while the claimant did not receive the greatest relief possible, she was awarded a direct benefit—a new assessment of her claim. *Id.* Subsequently, the court awarded her reasonable attorney's fees. In its awarding of attorney's fees, the court noted that the insurance company's decision to deny benefits may have been clouded by a conflict of interest. *Id.* at 1042. In addition, the claims administrator admitted that the plaintiff's claim was one of the more complicated ones he had ever seen, yet he neglected to seek an independent medical evaluation. *Id.* The court therefore determined that the insurance company's position was not substantially justified. *Id.* at 1043.

 As we previously stated, there is no conflict of interest here, nor is there any evidence that Quinn's claim is extremely complicated. While Quinn may be a "prevail-

ing party" in that she will have her case remanded, she is not a prevailing party in the truest sense of the term. Even though a prevailing party is entitled to a modest presumption that she should be awarded reasonable attorney's fees, *id.* at 1042, we are not convinced that Blue Cross' position was totally lacking in justification nor is there any evidence that Blue Cross acted in bad faith. In her determination, Calhoon relied on medical evidence from Drs. Schaeffer and Blonsky, who both opined that Quinn was not disabled. The problem was that Calhoon did not adequately assess whether Quinn could work in another occupation with a similar salary range as her job at HCSC. However, while this determination may have been arbitrary and capricious, it does not necessarily follow that it was wholly unjustified or made in bad faith. Should Quinn ultimately succeed in her claim and be awarded benefits, she will then have the benefit, as the prevailing party, of the modest presumption that she is entitled to reasonable attorney's fees. We therefore agree with the district court's original determination that, as a prevailing party in some sense of the term, Quinn is entitled to taxable costs, but not attorney's fees.

## CONCLUSION

For the reasons set forth above, the district court's decision that Calhoon acted arbitrarily and capriciously is affirmed. However, its decision that Quinn's benefits should be reinstated retroactively is reversed. Instead, the case should be remanded to the Program Secretary to make a more adequate assessment of whether Quinn is disabled as defined by the Program, specifically whether her vocational skills enable her to obtain another job with a comparable salary. Finally, the district court's decision that Quinn is entitled to reasonable attorney's fees is reversed and remanded, while its award of taxable costs is affirmed.