

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2007

# Gambino v. Arnouk

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5422

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Gambino v. Arnouk" (2007). *2007 Decisions*. Paper 1279.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1279

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  05-5422

ANTHONY GAMBINO; DANIELLE GAMBINO

v.

M.D. MUNZER ARNOUK; LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON

Liberty Life Assurance Company of Boston,

Appellant.

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-01611)
District Judge:   Hon. Faith S. Hochberg

Argued on March 26, 2007

Before:   FISHER, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed April 17, 2007 )

Paul R. Rizzo, Esquire (ARGUED)
DiFancesco, Bateman, Coley, Yospin,
Kunzman, Davis & Lehrer
15 Mountain Boulevard
Warren, NJ   07059

Counsel for Appellees Anthony and Danielle Gambino

Robert J. Mormile, Esquire (ARGUED)
Farkas & Donohue, LLC
389 Passaic Avenue
Fairfield, NJ   07004

        Counsel for Appellee Arnouk

Patricia A. Smith, Esquire (ARGUED)
Edward T. Groh, Esquire
Ballard, Spahr, Andrews & Ingersoll
Plaza 1000
Suite 500, Main Street
Voorhees, NJ   08043

        Counsel for Appellant Liberty Life Assurance
        Company of Boston

---

**O P I N I O N**

---

**ROTH**, <u>**Circuit Judge**</u>:

Anthony Gambino was denied short-term disability benefits by his insurance provider. He brought suit to recover benefits due pursuant to 29 U.S.C. § 1132(a)(1)(B).  The District Court awarded Gambino the short-term disability benefits for which he had applied, as well as an opportunity to apply for long-term disability benefits, which he had never done.  For the reasons set forth below, the judgment of the District Court will be reversed in part and vacated in part, and remanded for further proceedings consistent with the dictates of this opinion.

2

## I. Background

In March 2001, Gambino, a New Jersey resident, was employed as a sales manager at IKON Office Solutions, Inc. IKON provided its employees with short-term disability (STD) and long-term disability (LTD) plans. Gambino participated in both plans, which were in effect in March 2001. In April, 2001, he applied for STD benefits. His claim was denied, as was his appeal. He never applied for LTD benefits.

### A. Disability Policies

Liberty Life Insurance Company of Boston (Liberty) insured and administered the STD plan, pursuant to a Liberty policy purchased by IKON, and provided claims administration services for the LTD plan, which was self-funded by IKON. When an IKON employee applied for STD benefits, Liberty both evaluated the claim and paid the benefits with its own funds. Liberty's decisions regarding claims brought under the STD plan were conclusive and binding.

In contrast, IKON was the sponsor, insurer, and administrator of the LTD plan. Liberty was responsible for processing LTD claims, but IKON retained the authority to overrule Liberty's determinations. Benefits were paid by IKON, not Liberty.

Under both policies, a claimant was required to make the same showing to establish disability. When Liberty or IKON, as relevant, received proof that a covered person was disabled due to injury or sickness and required the regular attendance of a physician, Liberty or IKON would pay the covered person periodic benefits upon conclusion of an elimination

3

period during which disability had to be established but no benefits would be paid. "Disability" was defined under both policies to mean that the covered person had to be unable to perform all of the material and substantial duties of his or her occupation on an active employment basis because of an injury or sickness. The proof furnished had to establish the date on which the disability started, as well as the cause and degree of the disability. Under the STD policy, Liberty had sole authority to interpret the terms of the policy, and its decisions regarding the construction of the contract were conclusive and binding. Under the LTD policy, Liberty's determinations could be overruled by IKON.

As the names suggest, the main difference between the two policies (besides the role of IKON) was the duration of coverage. STD claims were for short-term benefits, up to 26 weeks, with an elimination period of two weeks. LTD claims were for long-term benefits, with the standard for proving disability heightening after 24 months, and an elimination period of six months. The difference between the lengths of the elimination periods meant that a covered person seeking STD benefits had to prove disability within a narrow two-week window, whereas a covered person seeking LTD benefits could prove disability lasting over a six-month period.

### B. Gambino's Claim

Gambino left work at IKON on March 9, 2001, after suffering a panic attack. On April 5, 2001, Gambino contacted Liberty to initiate a claim for STD benefits. Under the terms of his policy, it was Gambino's obligation to provide Liberty with proof of his

disability during the elimination period and the benefit period. Gambino provided Liberty with the name of only one health care provider — his primary care physician, Dr. Munzel Arnouk — and by April 16, 2001, Liberty had received no further information regarding the claim. Liberty repeatedly contacted Dr. Arnouk's office to seek Gambino's medical records but received no response. On April 18, Liberty called Gambino to seek records and faxed to Dr. Arnouk several forms for him to complete and return with copies of his records. Liberty reminded Gambino of the terms of his policy and informed him that he had until July 2, 2001, to provide the necessary information. No new information came. On July 3, 2001, Liberty determined that Gambino's STD claim should be denied for failure to provide medical proof of the claimed disability.

On July 9, 2001, Liberty received a short fax from Dr. Arnouk, which consisted of a certification of physician form, dated June 24, and an undated attending physician's statement. These forms contained short diagnostic statements but did not include any observations about Gambino's objective symptoms. Dr. Arnouk did not provide any records of Gambino's office visits.[1] Dr. Arnouk's submission provided Liberty with a limited amount of additional information, including a short diagnosis of "severe anxiety reaction with depression and psychological set back" and an opinion that Gambino was unable to return to work. These forms also established that Dr. Arnouk was an internist who referred

_____

[1] Item 9 of the Attending Physician's Statement form specifies that the doctor must attach "[o]ffice notes for the period of treatment" and "[t]est results showing objective findings."

5

Gambino for psychiatric care. Finally, and somewhat confusingly, Dr. Arnouk listed Gambino's condition as having started a week before Gambino left work.

Within several days of receiving the forms from Dr. Arnouk, Liberty received a fax from Dr. Jean Ying-Chang, a psychiatrist at Saint Clare's Behavioral Health Center, where Gambino was being treated. She stated that Gambino's diagnosis was "Social Phobia, Major Depressive Disorder, r/o Bipolar Disorder" and provided answers to those questions on the certification of physician form which Dr. Arnouk had left blank. In particular, Dr. Ying-Chang represented that Gambino was unable to perform work of any kind as of March 27, 2001. Upon receipt of this information from Drs. Arnouk and Ying-Chang, Liberty notified Gambino that it was reopening his claim.

None of this information included actual copies of medical records, which Liberty maintains are necessary so that it can independently verify the conclusions drawn by the treating doctors. Liberty therefore requested copies of the office records necessary to supplement the information it had already received. Liberty later discovered, though apparently not until the litigation process, that Dr. Arnouk had kept no records of treating Gambino and therefore had no office records. Despite Liberty's repeated requests for office records, Dr. Arnouk never informed Liberty or Gambino that no office records existed.

Liberty did manage to collect significant additional information about Gambino's treatment at Saint Clare's Behavioral Health Center, including some office records. A brief notation in the record revealed that after Gambino saw Dr. Arnouk on March 9, 2001, his

6

next medical visit was to a Dr. Tintea at St. Clare's, on March 27, 2001. Liberty never received any documentation of this visit, though other records from Saint Clare's indicated that Dr. Tintea performed an initial intake and prescribed medication. Gambino also saw Marion Robinson, a clinician who performed a psychiatric evaluation. According to this evaluation, Gambino had experienced irritability and feelings of depression over the previous one-and-a-half to two years. The evaluation also provided Liberty with clinical notes describing Gambino's condition, which is described as "irritable, constricted, and tense," with "notable flight of ideas." Records also described Gambino's panic symptoms in detail.

At Liberty, registered nurse Barbara McGivern and claims administrator Monica Dube reviewed the file. Nurse McGivern recommended that the claim be denied and expressed her reasons in internal notes. She expressed some confusion about "what changed" on March 9, 2001, to render Gambino disabled, since his condition was listed by Dr. Arnouk as starting on March 2, and reports from Saint Clare's suggested that he had been experiencing problems of a similar nature for a year and a half. Because Dr. Arnouk provided no office notes and no rationale for his medical decisions, Nurse McGivern felt that she was unable to evaluate Gambino's condition during the month of March (during which the entirety of the elimination period ran). Moreover, because Dr. Arnouk indicated that he was seeing Gambino on a weekly basis, Nurse McGivern assumed that a series of office records would be available. She was unable to determine much of anything regarding Gambino's appointment with Dr. Tintea on March 27, 2001, since no records of this visit were in the

7

file. Monica Dube agreed with Nurse McGivern that the claim should be denied on the basis of insufficient medical information.

On August 14, 2001, Liberty issued to Gambino a determination letter in which it explained that it was denying his claim for STD benefits because he had submitted insufficient supporting documentation. Liberty explained that, although it had received documentation relating to Gambino's treatment at Saint Clare's, this documentation did not relate back to start of the elimination period. Liberty also informed Gambino of his rights, including the right to appeal, under the Employee Retirement Income Security Act (ERISA). On August 20, 2001, Gambino appealed his claim and assured Liberty that it would receive all the information it needed as soon as possible.

Liberty allowed Gambino until September 12, 2001, to supply the necessary information from Dr. Arnouk. The information never arrived. On October 1, 2001, Liberty informed Gambino that it was maintaining its original decision to deny benefits and closing his file. The same day, Liberty sent a letter informing IKON that Gambino's claim for STD benefits had been denied. On November 9, 2001, IKON contacted Gambino and informed him that it had learned that his STD claim had been denied retroactive to March 9, 2001, and that he would be required to return to work on November 19, 2001. Gambino did not return to IKON and was terminated in December 2001. Gambino never applied for LTD benefits.

## C. District Court Review

Gambino and his wife, Danielle, brought suit in the District of New Jersey against

8

Liberty, alleging violations of ERISA that caused the loss of both STD and LTD benefits, and against Dr. Arnouk, claiming that his office's failure to supply information caused Liberty to deny Gambino's claim. Judge Hochberg presided over a bench trial at which she heard testimony from Gambino and his wife, Dr. Arnouk, and Harriett Michael, the case manager at Liberty who handled Gambino's appeal. During theGambinos' and Dr. Arnouk's testimony, counsel for Liberty frequently objected that the witnesses were providing testimony as to facts that were not in the administrative record, upon which Liberty based its denial of STD benefits, and which were not otherwise permissibly relevant.

At the conclusion of the bench trial, the District Court dismissed the suit against Dr. Arnouk, finding inconclusive proof of liability. *Gambino v. Liberty Life Assurance Coompany of Boston*, 2005 WL 4839146, at *1 (D.N.J. 2005). The District Court found Liberty's denial of Gambino's STD claim to be "arbitrary and capricious" and awarded Gambino STD benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), in the amount of $22,749.13. *Id.* at *8. The District Court also found that Gambino "could not have been expected to have applied for" LTD benefits after being denied STD benefits, as it was "entirely foreseeable" that a denial of STD benefits "would likely cause a beneficiary to assume that an LTD claim would be futile." *Id.* at *9. Because the District Court found that Liberty had violated the provisions of ERISA by denying Gambino's STD claim in an arbitrary and capricious manner, the court determined that Gambino was also entitled to equitable relief with respect to his request for LTD benefits. *Id.* As an equitable remedy, the court ordered Liberty,

which had the authority to process claims for LTD benefits, to process Gambino's claim for LTD benefits as if it had been timely filed and to make a recommendation to IKON following the usual and customary procedures for evaluating LTD claims. *Id*. The District Court did not explain what effect its ruling would have on IKON, a non-party to the suit, which serves as the insurer for the LTD plan and would be responsible for making any LTD benefit payments to Gambino.

### III. Jurisdiction

Liberty timely appealed the order of the District Court. The District Court had subject matter jurisdiction over this case pursuant to 29 U.S.C. § 1132(e). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

### IV. Discussion

#### A. STD Benefits

When a claims fiduciary has discretionary authority to determine eligibility for benefits, we employ an arbitrary and capricious standard of review in reviewing a denial by that fiduciary of a request for benefits under an ERISA-regulated plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under the arbitrary and capricious standard, we may overturn a fiduciary's decision "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *McLeod v. Hartford Life and Acc. Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004). Where the entity with discretionary authority to determine eligibility for benefits is also the entity that will be paying the benefits, we

10

recognize this structural conflict of interest by employing a "heightened" arbitrary and capricious standard of review. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392. We have adopted a "sliding scale" approach under which arbitrary and capricious review is a range, not a point, and our review is more or less probing depending on the degree of conflict present. *Id.* at 392-93. Nonetheless, the ultimate burden to establish that the claim determination was improper remains with the beneficiary. *Id.* at 392. In determining the degree of the conflict, we look not only to the ultimate decision, but also to the process by which the result was achieved. *Id.* at 393.

The District Court correctly summarized this law, but it did not determine where within the range of arbitrary and capricious review Gambino's case fell. Indeed, the District Court never explicitly discussed Liberty's degree of conflict. Thus, when it determined that Liberty's determination was "arbitrary and capricious," it did not specify the level of scrutiny that Liberty had faced. This was error.

The correct standard of review in this case is a deferential one, only slightly heightened by Liberty's structural conflict. Liberty made repeated attempts to supplement Gambino's file with the medical information it needed. Moreover, once it obtained some information, it reopened his file. The District Court intimates that evidence of a heightened conflict might be present because "Liberty seized upon any possible basis to ignore the ample and strong evidence of psychiatric disability." 2005 WL 4839146, at *8 n.11. Strict application of an insurer's policies, without more, is not evidence of a heightened conflict;

if lack of sufficient documentation relating to the two-week elimination period is an adequate basis for denial under the STD policy, then a denial on that basis cannot be evidence of a heightened conflict.

Moreover, by engaging in *de novo* factfinding, the District Court committed clear error which infected its review of the case. In *Lasser v. Reliance Standard Life Ins. Co.*, we held that "*de novo* factfinding is improper in reviewing a claims administrator's decision under the arbitrary and capricious standard of review." 344 F.3d 381, 385 n.3 (3d Cir. 2003). The District Court's factual findings are a pastiche of evidence drawn from the administrative record and testimony provided at the bench trial. The District Court relied on trial testimony to make findings regarding, *inter alia*, Gambino's panic attack at work, visit to Dr. Arnouk, termination from IKON, attempts to work in 2002, and continued psychiatric care. 2005 WL 4839146, at *5. More surprisingly, the District Court found it relevant to comment upon Gambino's demeanor at trial, which "showed aberrant agitation and highly unusual affect." It is clear that the District Court did not base its decision on the record that was before Liberty when Liberty denied the claim. Moreover, Gambino had the burden of establishing disability.[2]

---

[2]Neither was Liberty obligated to inquire into Gambino's work-related duties. The District Court relied on *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472 (7th Cir. 1998), to suggest that an insurer's failure to make such an inquiry is *per se* arbitrary and capricious. *Quinn* supports no such conclusion. In *Quinn*, the insurer made an affirmative determination that the beneficiary *could* perform her duties, even though the insurer did not know what those duties were. 161 F.3d at 476. The Seventh Circuit found such action by the insurer to be arbitrary and capricious. Gambino's case is quite different. Liberty found

The District Court erred by collecting information which Liberty did not have in the record before it and by deciding the case on that expanded record. We will therefore vacate the District Court's award of STD benefits and remand this case for further proceedings – i.e., a largely deferential review of the administrative record that was before Liberty when it made its decision.

## B. **LTD Benefits**

The District Court's equitable remedy of granting Gambino an opportunity to pursue his LTD is legally unsupportable. We will reverse the judgment as to that claim. As an initial matter, IKON retains final authority to determine whether Gambino is entitled to LTD benefits, and IKON is the party obligated to pay any LTD benefits due. IKON, however, is not a party to this suit. We therefore approach with skepticism an equitable "remedy" which, in reality, is likely to remedy nothing.

More importantly, Gambino never filed a claim with Liberty for LTD benefits. Except in limited circumstances, a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan. *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 249 (3d Cir. 2002); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d

---

that Gambino had not provided sufficient evidence to establish disability during the elimination period. Liberty denied Gambino's claim because it lacked sufficient medical evidence regarding his condition. Without knowing the details of Gambino's condition, Liberty could not go on to the next step of determining whether that condition rendered him unable to perform his duties, whatever those duties might have been. Liberty's lack of knowledge regarding Gambino's specific duties was therefore irrelevant.

13

Cir. 1990). The exhaustion requirement serves a number of important policy interests, including helping reduce the number of frivolous lawsuits under ERISA, promoting consistent treatment of claims, providing a nonadversarial method to settle claims, and minimizing costs of settlement. *Harrow*, 279 F.3d at 249. Gambino's failure to seek LTD benefits in the first place surely qualifies as a failure to exhaust. Thus, if Gambino is to find a remedy under ERISA, he must demonstrate that his failure to exhaust falls within an exception to the exhaustion requirement.

A plaintiff is excused from exhausting his remedies if it would be futile to do so. *Id.*; *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990). The law is clear that the plaintiff must show, by making a "clear and positive showing of futility," that it would have been *actually* futile to pursue the claim. *Harrow*, 279 F.3d at 249 (citation omitted). In *Harrow*, we quoted the Sixth Circuit as holding that "[a] plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) (internal quotation marks and citation omitted).

The District Court granted Gambino relief on the ground of futility because it was "entirely foreseeable" that a denial of STD benefits "would likely cause a beneficiary to assume that an LTD claim would be futile." 2005 WL 4839146, at *8. The District Court found that Liberty had offered no proof of any instance in which an individual who had been denied STD benefits was nonetheless awarded LTD benefits and that Liberty had never

14

notified Gambino of his right to apply for LTD benefits despite denial of his STD claim. *Id*. These findings, however, are not relevant as to whether it would actually have been futile for Gambino to apply for LTD benefits. The STD and LTD plans contain different elimination periods. It is possible for a covered person who lacked sufficient medical evidence to establish disability within a two-week window to nonetheless amass sufficient medical evidence to establish disability under the longer six-month period. There are a number of subsequent records of treatment within a six-month period which could have supported an award of LTD benefits. Thus, Gambino's failure to apply for LTD benefits should not have been excused.

## V. Conclusion

For the foregoing reasons, the judgment of the District Court will be **reversed in part and vacated in part** and the case **remanded** for further proceedings consistent with this Opinion.