# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 07-1022 & 07-1116

JO ANN TATE,

*Plaintiff-Appellee,*

*Cross-Appellant,*

*v.*

LONG TERM DISABILITY PLAN FOR SALARIED EMPLOYEES
OF CHAMPION INTERNATIONAL CORPORATION #506,

*Defendant-Appellant,*

*Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 8204—**Blanche M. Manning**, *Judge.*

ARGUED JANUARY 14, 2008—DECIDED SEPTEMBER 19, 2008

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Jo Ann Tate claims that the
administrator of her employer's long-term disability plan
(the "Plan") violated the Employment Retirement Income
Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, when,
after four years, it terminated her long-term disability
benefits. The Plan's determination was based on its con-

clusion that despite Tate's long history of psychiatric difficulties, including a major depressive disorder and bipolar disease, she is able to perform an occupation for which she is qualified. Yet the Plan did not determine what occupation that might be, or explain why, after years of concluding that Tate was disabled, it found Tate (a former sales employee who has not left her house in many years except to see her treating physicians) suddenly able to work. Tate filed suit to recover benefits after exhausting her administrative appeals. On cross-motions for summary judgment, the district court determined that the Plan administrator had acted arbitrarily and capriciously in denying Tate's benefits and remanded the case so that the Plan could conclusively establish whether Tate is entitled to benefits. The district court also denied Tate's motion for attorney's fees.

We affirm the district court's decisions. Because the record does not suggest the Plan's decision to terminate Tate's long-term disability benefits was the result of an informed reasoning process, we conclude that the decision was arbitrary and capricious. But we cannot say that Tate was entitled to continued long-term disability benefits at the time her benefits were terminated, so we affirm the district court's decision to remand the case for further proceedings. Additionally, because it is too early to tell if Tate is the "prevailing party" in this case, we affirm the district court's denial of Tate's motion for attorney's fees.

## I.  BACKGROUND

Tate was employed as a sales representative at Nation-wide Papers, a subsidiary of Champion International Corporation, until June 30, 1998, when she left work due to problems with severe anxiety and depression. As an employee of Champion, Tate was eligible for short-term and long-term disability benefits. Champion's benefits plan is governed by ERISA, 29 U.S.C. §§1001 *et seq.*[1]

After receiving short-term disability benefits for six months, Tate applied for long-term disability in 1999. The Plan determines an employee's eligibility for long-term disability benefits in two stages. For the first twenty-four months after an employee receives short-term disability benefits, the employee must be found unable to perform the duties of her employment with the company. To qualify for benefits after that time, the employee must be found unable to engage in "any occupation" for which she "is or may become reasonably qualified by training, education, or experience." The Plan refers to these different standards of eligibility as the "own occupation" standard and the "any occupation" standard. Tate was approved for long-term disability on March 8, 1999. The "own occupation" stage ended in 2001 and Tate continued to receive benefits for another two years, during which time she submitted reports by her physicians regarding her condition.

---

[1] When Tate first applied for disability benefits, CORE, Inc. served as the third-party claims administrator. It was replaced on January 1, 2001 by Wausau Benefits, Inc.

Pursuant to the administrative services agreements between the Plan administrators and Champion, the Plan relied on consulting physicians to review the files of employees receiving benefits. In the four years that Tate received benefits, at least twelve physicians evaluated her condition. Among those physicians are Tate's own physicians, Dr. Sharon Greenburg and Dr. Lawrence Kayton, both of whom treated Tate, as well as a multitude of physicians retained by the Plan to evaluate Tate's disability.

Although Tate's entire medical history need not be cataloged here, a brief synopsis provides context for this case. Tate suffered from depression, panic disorder, and bipolar disorder. In 1999, she was diagnosed by Dr. Greenburg as having a major depressive disorder that caused her to feel hopeless, fatigued, irritable, and uninterested in people. Dr. Kayton (who conferred with Dr. Greenburg about Tate's condition) diagnosed Tate with bipolar disorder. Tate's physicians attempted to improve her condition with medication which had varying results. In November 2000, Tate reported she was able to perform some activities of daily living but that she did not leave her house except to see her doctor. She continued to suffer from severe mood swings and had difficulty maintaining concentration, engaging in social interactions, and completing tasks. Although her mood swings appear to have ceased in late 2001 and early 2002, they returned by June 2002, when her overall condition worsened. Her depression never subsided. In February 2003, she was struggling with activities of daily living other than eating and cleaning.

On May 30, 2003, the Plan informed Tate she was no longer eligible for disability benefits because she did not meet the definition of "totally disabled" under the "any occupation" standard. The Plan terminated her benefits based on a report by Dr. Gail Tasch, who stated that although Tate exhibited signs of major depressive disorder, she "did not manifest significant measurable impairment which would prevent her from performing her occupation or any occupation." Dr. Tasch noted that Tate, who had difficulty concentrating and establishing a daily routine, was nonetheless able to care for her "affairs" and herself and her pets. Dr. Tasch did not examine Tate; her analysis was based on a review of Tate's file, which included case manager notes, an employee questionnaire, a discussion with Dr. Kayton, psychotherapy progress notes, and the review of another physician's report dated April 17, 1999.

Tate appealed the Plan's decision to terminate her benefits, arguing that Dr. Tasch's opinion was based on outdated medical records. Tate submitted a report from Dr. Kayton dated November 20, 2003, which stated that Tate suffered from moderately severe bipolar disorder that, despite intensive treatment, had not sufficiently stabilized to permit her to work in a job commensurate with her abilities, experience, and previous levels of employment. In support of his conclusion, Dr. Kayton noted that Tate was hypomaniac, inefficient in completing tasks, and that she suffered from concentration problems and episodic rages.

In response to Tate's appeal, the Plan had Tate's medical record reviewed by Dr. Barbara H. Center. Dr. Center, like

Dr. Tasch, did not examine Tate, but spoke to both of her treating physicians and reviewed, among other things, Tate's job description and résumé. Dr. Center concluded that Tate did not manifest significant measurable impairment that would render her unable to do any job for which she was qualified. Dr. Center based this conclusion on the fact that Tate was able to maintain her own home, complied with treatment, and had experienced benefit from medication. The Plan notified Tate that based on Dr. Center's review, she no longer qualified for long-term disability benefits.

Tate brought suit challenging the termination in the Northern District of Illinois. The parties filed cross-motions for summary judgment. The district court granted Tate's motion for summary judgment, holding that the Plan's decision to terminate Tate's benefits was arbitrary and capricious because the reviewing physicians' opinions were comprised of conclusory assertions unsupported by facts. Specifically, the court noted that the Plan failed to identify the types of positions Tate could undertake, conduct an employability review, or conduct a transferable skills analysis (TSA). The Plan appeals this decision.

The district court remanded the case so that the Plan could conclusively determine whether Tate is entitled to disability benefits. The court also denied Tate's request for attorney's fees, holding Tate was not yet a prevailing party and that the record did not suggest the Plan had terminated Tate's benefits in bad faith. Tate filed a motion to alter or amend the court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure,

arguing that the court should have reinstated her benefits rather than remanding the case for further disposition. The court denied Tate's motion on the ground that the Plan's denial of Tate's benefits was an "initial denial" rather than a termination of benefits for which Tate had previously been determined eligible. Tate appeals these decisions and seeks attorney's fees.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 626 (7th Cir. 2005). In reviewing cross-motions for summary judgment, we view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion is made. *Gazarkiewicz v. Town of Kingsford Heights, Ind.,* 359 F.3d 933, 939 (7th Cir. 2004).

### A.  Termination of Tate's benefits was arbitrary and capricious.

Where, as is the case here, the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review a denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). The parties do not dispute that the Plan's administrator has discretionary authority and that the district court used the

correct standard when it reviewed Tate's denial of bene-
fits under the arbitrary and capricious standard.

Notwithstanding the highly deferential nature of this
standard, we have held that termination procedures must
substantially comply with the ERISA requirement "that
specific reasons for denial be communicated to the claim-
ant and that the claimant be afforded an opportunity
for 'full and fair review' by the administrator." *Halpin v.
W.W. Grainger, Inc.,* 962 F.2d 685, 688-89 (7th Cir. 1992).
"[W]e will not uphold a termination when there is an
absence of reasoning in the record to support it." *Hackett,*
315 F.3d at 774-75 (standard of review is not a "rubber
stamp"); *Halpin,* 962 F.2d at 695 ("[T]he administrator
must weigh the evidence for and against [the denial or
termination of benefits], and within reasonable limits, the
reasons for rejecting evidence must be articulated if there
is to be meaningful appellate review.") (internal quotation
marks omitted).

The issue in this case is whether the Plan offered a
reasonable explanation, based on the evidence, for its
determination that Tate was not "totally disabled" as
defined by the terms of the plan. In determining Tate's
eligibility for long-term disability benefits, the Plan had
to determine whether Tate was "incapable of performing
any occupation or employment for which [she was]
qualified by education, training, or experience." So as a
matter of logic, this means the Plan needed to consider (at
minimum) Tate's qualifications in determining whether
her impairment affects her ability to work.

We agree with the district court that the Plan's decision
to terminate Tate's benefits was arbitrary and capricious

because the Plan's conclusion that Tate's disability did not render her unable to do any job for which she was qualified was not based on any explanation or reasoning. The Plan twice informed Tate of its decision to terminate her benefits, first based on a report by Dr. Tasch, and then based on a report by Dr. Center in response to Tate's appeal. Both determinations are at issue here.

Dr. Tasch first reviewed Tate's file and issued the report that provided the basis for the Plan's May 30, 2003 determination that Tate did not qualify for benefits. As an initial matter, the record does not demonstrate that Dr. Tasch even reviewed Tate's employment file so it is not clear how she could have come to any reasonable conclusion about Tate's qualifications. *See Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 476-77 (7th Cir. 1998) (finding that plan administrator's review was arbitrary and capricious when the reviewer failed to adequately investigate the requirements of the claimant's previous occupation). In her report, Dr. Tasch states that though Tate "appears to meet the criteria for a diagnosis of Major Depressive Disorder," she is not unable to perform any occupation. In lieu of an explanation for this conclusion, Dr. Tasch states (and this is the full extent of her analysis) that because Tate was "working in a high stress position previously [she] may benefit from a job that is not so intense." We do not know what she means by jobs that are not "intense" or whether Tate is qualified for those jobs. The Plan's letter informing Tate that her benefits were being denied contains no reasons for the denial other than stating that a physician found that Tate was not totally disabled from any occupation so there is nothing further in the initial denial letter for the court to review.

In response to Tate's appeal the Plan had her file re-
viewed by Dr. Center, whose report indicates that she
considered Tate's résumé and job description, in addi-
tion to her medical files. But what Dr. Center did with
that additional information is less than clear. For ex-
ample, Dr. Center's report states that "Interpersonal
relationship difficulties characterized by the patient
becoming 'enraged' if she feels she is being patronized or
if others are incompetent may be limiting in terms of
future vocational options." Nevertheless, Dr. Center
concludes that Tate (who was employed in sales) is not
totally disabled from any occupation at this time because
she is able to maintain her own home, complies with
treatment, and there is no documentation of suicidal
ideation, homicidal ideation, or psychosis. Dr. Center
also states that the addition of Adderall to her medica-
tion regimen in September 2002 provided her "signif-
icant benefit."[2]

Dr. Center's report is just as defective as Dr. Tasch's
because nowhere in the report does Dr. Center connect
her conclusion that Tate is not totally disabled to some-
thing that is relevant to Tate's ability to work. Similarly,
Dr. Center's general conclusion that medication has
provided "significant benefit" to Tate does not prove

---

[2]  Dr. Center's report also states that Tate has a "long history of
psychiatric difficulties" and that she "is likely to have ongoing
psychiatric mental health symptoms for an extended period
of time." The report notes that Tate has ongoing difficulties
with hypomania, is inefficient in completing tasks, and suffers
from mood swings.

anything unless the improvement is shown to be connected in some rational way to her ability to work. *See Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) (" 'Getting better,' without more, does not equal 'able to work.' ").

The Plan's second letter to Tate informing her that its decision to deny her benefits would remain the same echoes Dr. Center's non-sequitur analysis. The letter states:

> It is the opinion of the reviewer that you are able to maintain your own home and care for your animals. There is no documentation of suicidal ideation, homicidal ideation or psychosis. You have been compliant with Outpatient psychotherapy and multiple medication trials. You are able to understand and participate in the process regarding disability determinations. It appears that you have had an exacerbation of mood symptoms following the determination regarding disability. However, no specific measurable impairments rendering you unable to do "any job" for which you are qualified by reason of training, education, and/or experience were noted.

That Tate can clean her home and care for her pets after years of treatment and medication does not support a conclusion that she is capable of employment unless the Plan believes she is qualified to care for animals as a living. That she has not contemplated killing herself or others is even less probative of her ability to work. These reasons are not relevant to a conclusion that Tate, a former sales employee, is able to do a job for which she is qualified.

The Plan protests that it should not be required to review vocational evidence in making disability determinations. But logically, the Plan could have made a reasoned determination that Tate was not "totally disabled" only if it relied on evidence that assessed her ability to perform a job for which she is qualified by education, training, or experience. This means the Plan must have made a reasonable inquiry into Tate's medical condition as well as her vocational skills and qualifications for its decision denying benefits to be upheld. *Quinn*, 161 F.3d at 476. In so holding, we express no opinion as to whether ERISA plan administrators as a rule must hire vocational experts or perform a transferrable skills analysis. But it is the Plan's burden to make sure its determination—that Tate could perform a job for which she was qualified despite her medical condition—is reached in a manner that substantially complies with ERISA, *see Halpin*, 962 F.2d 688-90. That did not happen here.

Although the record shows Dr. Center was given Tate's résumé and job description as part of her materials to consider, nothing in Dr. Center's report or the Plan's specific reasons for denial relates to Tate's job qualifications. Unless the Plan provides a reasonable explanation for its conclusion that Tate was capable of performing another job for which she was qualified, we have no basis to uphold the Plan's decision. "Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review." *Hackett*, 315 F.3d at 775; *see also Halpin*, 962 F.2d at 695 (rejecting plan administrator's denial of benefits as too conclusory to permit appellate review where administrator did not weigh the evidence

for and against a determination that a claimant is ready to return to work).

The Plan contends that Tate bears the burden of demonstrating through a vocational expert that she is unable to perform any job for which she is qualified. We disagree. Although she certainly *could have* provided the affidavit of a vocational expert, there is nothing in our case law that requires her to do so as long as she provides evidence that she has an impairment that affects her ability to work. Tate presented evidence, in the form of her physician's report, that she was not capable of performing any job. In his November 2003 letter to the Plan, Dr. Kayton wrote that Tate is hypomaniac, inefficient in completing tasks, and suffers from pronounced concentration problems, emotional volatility, episodic rages, and an inability to handle even her activities of daily living. Dr. Kayton reported that Tate had not been free from mood swings since 1998, and that because of her unpredictable temper, she had severely limited her interpersonal contacts. Accordingly, Dr. Kayton wrote, her illness did not permit her to work in a job commensurate with her abilities, experience, and previous levels of employment.[3]

---

[3] The Plan contends in its briefs that Tate's medical records and submissions contain conflicting information and therefore Dr. Tasch and Dr. Center were justified in questioning the objectivity of Dr. Kayton and Dr. Greenburg. Even if this were true, the credibility of Tate's physicians is not discussed anywhere in the record or in the reports of Dr. Tasch and Dr. Center. Post hoc rationalizations for the denial of benefits on appeal

(continued...)

Without refuting this report or the assertions con-
tained within, the Plan responded with the bare conclu-
sion that Tate could do another job. This does not suffice
under the arbitrary and capricious standard of review
because there is no reason for this conclusion. It is well
within the power of the Plan to reject Dr. Kayton's and
Dr. Greenburg's conclusions but it must do so with some
explanation, especially in light of the fact that Tate was
awarded disability benefits for nearly four years on the
basis of those doctors' opinions. *See Hackett*, 315 F.3d at
775 (termination procedures were arbitrary and capricious
when administrator did not explain departure from
opinions of previous doctors).

For the Plan to make a reasonable determination that
Tate was able to work in an occupation for which she
was qualified despite her impairments, the Plan was
required, at minimum, to assess her qualifications and
how they comport with jobs that Tate might be able to
perform in spite of her impairments. By not performing
this assessment before determining that Tate was not
totally disabled, the Plan acted arbitrarily and capriciously.

## B. Remand, not reinstatement, is the appropriate remedy.

Having found the Plan's determination to be arbitrary
and capricious, we turn to Tate's cross-appeal, which

---

[3] (...continued)
are not sufficient. *Halpin*, 962 F.2d at 696.

raises the issue of whether remand is the proper remedy. We review the district court's decision for an abuse of discretion. *Halpin*, 962 F.2d at 697.

Courts that find a plan administrator's denial of benefits to be arbitrary and capricious may either remand the case for further proceedings or reinstate benefits. Generally, "when a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case, as well as a conventional case, is to remand for further findings or explanations, unless it is 'so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'" *Quinn*, 161 F.3d at 477 (quoting *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996)). Here, our finding that the Plan's determination was arbitrary and capricious is based on the fact that the Plan did not provide adequate reasoning for its conclusion, so remand is appropriate. We express no opinion regarding the merits of Tate's claim as the record does not make clear either way whether Tate is "totally disabled."

Tate argues that she is entitled to reinstatement of benefits because her claim involves the denial of benefits for which she had initially been deemed eligible. In *Hackett*, we noted a distinction "between a case dealing with a plan administrator's initial denial of benefits and a case where the plan administrator terminated benefits to which the administrator had previously determined the claimant was entitled." 315 F.3d at 775. Tate contends that her case fits into the latter category because the "own

occupation" period for disability benefits ended in May 2001 and she received long-term disability benefits for two years after that time. According to Tate, this means she must have been approved for disability under the "any occupation" standard.

We agree that if Tate could prove she had been entitled to continued benefits at the time of the Plan's decision, reinstatement would be the proper remedy. *See Schneider*, 422 F.3d at 629 ("In fashioning relief for a plaintiff who has sued to enforce her rights under ERISA, *see* 29 U.S.C. § 1132(a)(1)(B), we have focused 'on what is required in each case to fully remedy the defective procedures given the *status quo* prior to the denial or termination' of benefits." (quoting *Hackett* 315 F.3d at 776)). But the fact that the Plan continued to provide Tate long-term disability benefits after the initial twenty-four months does not prove that the Plan ever determined she was eligible for benefits under the "any occupation" standard that Tate must meet for continued benefits. Although it is odd that the Plan would continue to award benefits to Tate for two years without holding her to the more stringent "any occupation" standard, this fact alone does not necessarily mean Tate was entitled to continue receiving benefits under the terms of the plan.

Like the district court, we cannot determine on this record whether Tate is totally disabled from any occupation. *See Quinn*, 161 F.3d at 478 (reversing district court's award of reinstatement where it was not clear claimant was disabled under the terms of the benefits program). Therefore, we view this situation to be closer to an initial

denial of benefits for which remand is appropriate rather than a termination of benefits for which reinstatement is appropriate.

Because we are not reinstating Tate's benefits, we do not reach the issue of whether Tate is entitled to prejudgment interest on the award.

### C.  Tate's claim for attorney's fees is premature.

Tate seeks attorney's fees if we reinstate her benefits, an argument that is mooted by our holding that Tate is not entitled to reinstatement. Tate also argues that she should be awarded attorney's fees even if we affirm the district court's decision to remand the case. We disagree.

We review a district court's decision to deny attorney's fees for an abuse of discretion. *Herman v. Central States, Southeast and Southwest Areas Pension Fund*, 423 F.3d 684, 695 (7th Cir. 2005). In analyzing whether attorney's fees should be awarded to a "prevailing party" in an ERISA case, a court should consider whether the losing party's position was justified and taken in good faith. *Quinn*, 161 F.3d at 478. However, we have held that a claimant who is awarded a remand in an ERISA case generally is not a "prevailing party" in the "truest sense of the term," *id.* at 478-79. The district court first considered this question and relied on *Quinn* to hold that Tate was not yet a prevailing party. Then the district court found that the record did not suggest that Tate's benefits were terminated in bad faith or that the Plan's position was not substantially justified.

Tate urges us to reconsider our holding in *Quinn* but cites cases that predate *Quinn*, *see Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995) and *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344 (9th Cir. 1990). These cases do not persuade us to depart from *Quinn*. The district court considered the proper test, and its conclusion was not an abuse of discretion. Tate is not entitled to attorney's fees at this juncture.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.